Jeffrey M. Roth
Michael Green
Crowley Fleck PLLP
305 South 4th St E, Suite 100
Missoula, MT 59801
Telephone: (406) 523-3600
jroth@crowleyfleck.com
mgreen@crowleyfleck.com

*Attorneys for Plaintiff Fort Harrison Veterans Residences, LP*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| FORT HARRISON VETERANS RESIDENCES, LP, <br>     *Plaintiff*, <br><br> v. <br><br> MONTANA DEPARTMENT OF COMMERCE, in its official capacity and as a federally designated public housing agency, <br>     *Defendant*. | CIVIL ACTION FILE NO. |

### COMPLAINT AND DEMAND FOR BENCH TRIAL

Plaintiff Fort Harrison Veterans Residences LP, a Florida limited partnership ("FHVR" or "Plaintiff") files this action for breach of contract and declaratory judgment against Defendant Montana Department of Commerce ("Defendant"), in its official capacity as a public housing agency ("PHA") as defined under the United States Housing Act of 1937 (the "Housing Act of 1937"), and states as follows:

## INTRODUCTION

FHVR brings this action against Defendant for its unlawful application of federal rules and standards, unlawfully undertaking inspections without authority, and breach of a federal contract, which includes damages attributable to tenant payments governed by that contract.

FHVR owns a residential development located in and on property owned by the United States of America through the United States Department of Veterans Affairs ("VA") at Fort Harrison.  The VA ground leased the real property to FHVR which developed and rehabilitated affordable housing that serves veterans. FHVR rents new and rehabilitated apartments and single-family detached homes on the property to veterans who are provided federally assisted housing through a federal housing program. Defendant, in its capacity as a public housing agency ("PHA") under the Housing Act of 1937, entered into a housing assistance payment ("HAP") contract with FHVR requiring it to administer federal funds designated to pay a portion of the veteran tenant's rent under the federal housing program. In September of 2021, a tenant provided verbal notice to the Defendant and FHVR's third-party property manager of potential lead-based paint exposure at a single unit of one of FHVR's apartment buildings. Despite unconfirmed and as yet confirmed information about the potential exposure, FHVR voluntarily and immediately undertook remedial measures. However, Defendant unilaterally and unlawfully

decided to cease HAP for many apartment units with no connection to the single unit at issue. Accordingly, FHVR brings this suit seeking declaratory judgment and damages for breach of contract.

## PARTIES AND BACKGROUND

1.      Plaintiff FHVR is a Florida limited partnership, with its principal place of business located at 2 North Tamiami Trail, Suite 800, Sarasota, FL 34236.  It is registered to do business in Montana.

2.      FHVR, its general partners, limited partners, and special limited partners all reside outside the State of Montana.

3.      FHVR is the ground lessee on certain real property owned by the VA pursuant to the Enhanced Use Lease of Certain Real Property and Facilities at the Fort Harrison, MT VA Medical Center dated December 27, 2011, as amended from time to time ("Ground Lease").

4.      Under the Ground Lease, FHVR took possession of six (6) acres at Fort William Henry Harrison in Lewis and Clark County, Montana, including improvements identified as buildings 2, 3, 4, 5, 11, 12, 13, 14, 35, 41, and 42 ("Property").

5.      FHVR developed or rehabilitated forty-two (42) units (collectively the "Project") on the Property.

6.     Some of the units in the Project were newly constructed units while most of the units were located in heavily rehabilitated historical buildings dating back to the time of Fort Harrison's existence as an active military base beginning in 1895.

7.     Defendant is a department of the State of Montana and a PHA for purposes of federal law. Mont. Code Ann. §§ 2-15-104 and 2-15-1801 et seq., 42 U.S.C. § 1437a(b)(6), and 24 C.F.R. §§ 5.100, 983.4(a) and (b) incorporating the applicable definitions in 982.4(b).  Defendant is located at 301 S. Park Ave., Helena, Montana 59620.

8.     For purposes of enforcement of the provisions of the Housing Act of 1937, Defendant is a federally recognized PHA by the United States Department of Housing and Urban Development ("HUD").   As a PHA, Defendant administers funds that are used to provide participants with federally assisted housing under Section 1437f of the Housing Act of 1937. 42 U.S.C. §§ 1437f(o)(13) and 24 C.F.R. Parts 5 and 983.

9.     This suit is brought against Defendant in its official capacity as a federally recognized PHA.  Congress created PHAs in the Housing Act of 1937. HUD regulations set forth the requirements for all PHAs, including the Defendant. 24 C.F.R. Parts 5, 903, and 982 (specifically, § 982.51 et seq.). Upon HUD confirming compliance with the requirements of the Housing Act of 1937 and the

above referenced federal regulations, each PHA receives a PIH number.  HUD identifies the Defendant as public housing agency MT901.

10.    Defendant undertook obligations and requirements in order to receive the allocation of federally assisted housing in the form of project-based voucher ("PBV") HAP authorized under § 1437(o)(13) of the Housing Act of 1937 and 24 C.F.R. Parts 5 and 983 ("PBV HAP").

11.    For purposes of federal law and regulation, FHVR is an "owner" pursuant to § 1437f(f)(1) of the Housing Act of 1937; 24 C.F.R. § 5.100 defining "federally-assisted housing" among other relevant terms; 24 C.F.R. § 35.700, et seq., making owner the "designated party," for purposes of Part 35 compliance; and 24 C.F.R. § 983.3(a) and (b) incorporating the definitions set forth in 24 C.F.R. § 982.4(b), including the definition of "owner," and adding definitions set forth at 24 C.F.R. § 983.3(b).

## **JURISDICTION AND VENUE**

12.    This Court has federal question subject matter jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 because the PBV HAP Contract at issue, as well as Defendant's conduct as a PHA, and the applicability of standards and rules are governed by federal law.

13.    This Court also has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and

the Defendant, and the amount in controversy exceeds $75,000.

14.     Personal jurisdiction over Defendant is proper. Defendant's violations and misapplication of federal law and regulation and breach of contract occurred in Montana and caused harm to Plaintiff in Montana.

15.     Pursuant to 28 U.S.C. § 1391 and Local Rule 1.2(c)(4), venue properly lies in this Judicial District because Defendant is headquartered in this Judicial District and the Helena Division and a substantial part of the events giving rise to the claims herein occurred in this Judicial District and the Helena Division.

## REGULATORY BACKGROUND

16.     Many of the residents at the Project are veterans entitled to supportive services from the VA as well as federally assisted housing support.

17.     In addition to owning the Property and the surrounding land and buildings, the VA administers the case management and direct service portion of the services the residents at the Project receive.  HUD's Veterans Affairs Supportive Housing ("VASH") program administers rental assistance to veterans in various forms.

18.     Defendant, as PHA, administers payment of VASH rental assistance from funds HUD allocates to the Project pursuant to its HUD-approved annual PHA Administrative Plan.

<u>PBV HAP CONTRACT</u>

19.     Section 1437f of the Housing Act of 1937 provides tenant-based and project-based assistance programs intended to assist low-income families in obtaining decent, safe, sanitary, and affordable housing. 42 U.S.C. § 1437f(a) and 24 C.F.R. Parts 982 (tenant-based assistance) and 983 (PBV or project-based vouchers).  These are the two most common forms of the subsidy referred to as Section 8 housing.

20.     The PBV HAP Contract provides that the Project is a PBV project subject to 24 C.F.R. Part 983.

21.     HUD enters into annual contribution contracts with PHAs such as the Defendant that, in turn, enter into PBV HAP contracts with owners like FHVR. 42 U.S.C. § 1437f(a) and 24 C.F.R § 982.151, et seq.

22.     Under PBV HAP contracts, the PHA makes housing assistance payments to the owner of a "multi-dwelling" or "multi-unit" building or buildings for units that are set aside to house families eligible to receive federally assisted housing under the Housing Act of 1937 and its appurtenant regulations.

23.     Generally, tenants pay a portion of market rent as defined by the Housing Act of 1937, 24 C.F.R Part 888, and the local market.  Tenant's payment is defined as "total tenant payment," under 24 C.F.R. § 5.628, to the owner. The PHA pays the remaining portion in the form of HAP.

24.     During the term of a PBV HAP contract, the PHA makes the housing assistance payments to the owner in accordance with its terms. 24 C.F.R. §§ 983.201 et seq. The housing assistance payments shall be made for the months during which a unit is leased and actually occupied by an eligible family. 24 C.F.R. § 983.351(a)(1).  The HAP made by the PHA to the owner under a PBV HAP contract must be paid to the owner on or about the first day of the month for which payment is due unless the owner and the public housing agency agree on a later date.  24 C.F.R. § 983.351(d).

25.     A PBV HAP contract continues until its expiration or termination by the owners or the PHA. 24 C.F.R. § 983.257.

## HOUSING QUALITY STANDARDS

26.     HUD has promulgated regulations related to federal Housing Quality Standards ("HQS") that apply to owners with multifamily buildings that receive PBV. 24 C.F.R. § 983.101. While HQS is generally described under 24 C.F.R Part 982 related to the housing choice voucher ("HCV") program, some of those HQS also apply to PBV projects. Notably, though, HUD regulations expressly state that under 24 C.F.R. § 983.10(b)(2)(ii)(A), the lead-based paint requirements under 24 C.F.R. § 982.401 do not apply to project-based housing projects under the PBV program (i.e., 24 C.F.R. Part 983).

27.    All properties receiving federally assisted housing payments under a PBV HAP contract must comply with HQS at commencement of assisted occupancy and the owner must maintain HQS throughout the assisted tenancy under 24 C.F.R. § 983.401.

## LEAD-BASED PAINT REGULATIONS

28.    Different lead-based regulations apply to HCV and PBV.  The lead-based paint requirements under 24 C.F.R. Part 982 apply to Housing Choice Vouchers, while the lead-based paint rules that apply to PBV are set forth in 24 C.F.R. Part 983.

29.    HUD also has promulgated Lead-Safe Housing Rules ("LSHR") located at 24 C.F.R. Part 35. Subpart H of the LSHR applies to the project-based assistance such as the Project. 24 C.F.R. § 35.700 et seq.

30.     Under the Residential Lead-Based Paint Hazard Reduction Act of 1992, HUD's Office of Lead Hazard Control and Healthy Homes ("OLHCHH") is authorized to develop, demonstrate, and promote measures to correct lead-based paint related health and safety hazards in the home environment that affect children and ensure regulatory compliance with the LSHR.

31.    Subpart H of the LSHR establishes procedures to eliminate as far as practicable lead-based paint hazards in residential properties receiving project-based assistance under a HUD program. 24 C.F.R. § 35.700(a).

32.     Subpart H of the LSHR provides requirements for environmental investigation, risk assessment, interim and permanent clearance, verification, and lead-based paint hazard reduction for children with an elevated blood lead level ("EBLL").  24 C.F.R. §§ 35.730, 35.1225, and 1320.

33.     In order for the obligation to conduct an environmental investigation related to an EBLL to apply, the owner must first be notified by a public health department or other medical health care provider that a child under six years of age living in the unit has been identified as having an EBLL. 24 C.F.R. § 35.730(a).

34.     In 2017, the PIH and OHHLHC provided non-regulatory policy guidance on HUD's Lead Safe Housing Rule Pertaining to Elevated Blood Lead Levels for the Public Housing, Housing Choice Voucher, and Project-Based Voucher Programs.  PIH Notice 2017-13 (August 10, 2017).

35.     HUD specifically defines "medical health care provider" as the *child's* medical health care provider, *not* any general source of medical information.   PIH Notice 2017-13 (August 10, 2017) at p. 13.

36.     If the owner receives notice from a child's parent or guardian that a child under six years of age living in the unit may have EBLL, the owner shall immediately verify the information with the public health department or the *child's* medical health care provider.  24 C.F.R. § 35.701 and PIH Notice 2017-13 at p. 13.

37.     Absent a written EBLL diagnosis from the *child's* medical healthcare professional or the public health department, EBLL is *not* deemed verified for purposes of federal regulation.  PIH Notice 2017-13 at p.13.

## STATEMENT OF FACTS

### FHVR Enters Into PBV HAP Contract With MDC

38.     The Defendant administers a PBV program in the State of Montana within the requirements imposed on all PHAs under the Housing Act of 1937.

39.     In or around May 2019, FHVR completed rehabilitation on forty units and construction on two new units in the Project.

40.     Westech Environmental Services, Inc., a contractor for the VA, issued a Final Environmental Assessment in August, 2017 related to the Property finding:

"This assessment concludes there would be no significant adverse effect to the human or natural environment, provided adherence to the conditions placed on cultural resources as part of final Section 106 NHPA consultation and the implementation of best management practices (BMPs) and regulatory compliance control and mitigation measures.  As such, this [Environmental Assessment] concludes that a Finding of No Significant Impact (FONSI) is appropriate, and an EIS is not warranted."  p. 31. A true and correct copy is attached hereto and incorporated herein as Exhibit A.

41.     On information and belief, Defendant inspected all of the FHVR units in the Project and they all passed HQS prior to the first resident occupying a unit.

42.     Northern Industrial Hygiene, Inc. ("Northern Industrial Hygiene"), a certified environmental consulting firm retained by Beneficial Communities, the general partner of FHVR, issued a "Lead-Based Paint Clearance Testing" letter to Beneficial Communities, the general partner of FHVR, on May 22, 2019, covering Buildings 11, 12, 13, 14, 41 and 42.  The letter stated that the buildings met the HUD requirements for successful completion of a lead remediation project. A true and correct copy is attached hereto and incorporated herein as Exhibit B.

43.     Northern Industrial Hygiene issued additional various "Lead-Based Paint Clearance Testing" letters to FHVR, the final letter being provided on April 2, 2020, covering all buildings on the Property, including Unit 41. The letter stated that the buildings successfully passed visual and analytical lead dust testing.  True and correct copies of the letters are attached hereto and incorporated herein as Exhibit C.

44.     FHVR received final inspection and certificates of occupancy for all units on the Property from B & F Construction Code Services Inc. on or about June 11, 2019, certifying that all of the units complied with the International Building Code and the laws of the State of Montana.  A true and correct copy is attached hereto and incorporated herein as Exhibit D.

45.     FHVR, as Owner, executed a Section 8 Project-Based Voucher Program Housing Assistance Payments Contracts New Construction or Rehabilitation with the Defendant, as the PHA on or about May 5, 2017 and September 24, 2021 ("PBV HAP Contract"). A true and correct copy of the executed PBV HAP Contracts, including Exhibits A through D, are attached hereto and incorporated herein as Exhibit E (together, the May 5, 2017 and September 24, 2021 HAP Contracts are together referred to herein as the "PBV HAP Contract").

46.     Under federal regulation (24 C.F.R. § 983.58 and 24 C.F.R. Part 58) Defendant could not lawfully execute the PBV HAP without first certifying to HUD that the Property and improvements were in compliance with 24 C.F.R. Part 35.  42 U.S.C. § 3545(b)(1) and 24 U.S.C. §§ 983.3, 983.11, 983.55, 983.58, and 983.153.

47.     Upon information and belief, Defendant certified to HUD that the Property and improvements were in compliance with 24 C.F.R. Part 35 when Defendant submitted and received approval of its subsidy layering review, which includes compliance with federal environmental law, including lead-based paint requirements.  42 U.S.C. § 3545(b)(1) and 24 U.S.C. §§ 983.3, 983.11, 983.55, 983.58, and 983.153.

48.     Pursuant to the terms of the PBV HAP Contract, Defendant, as the PHA, "shall make housing assistance payments to the owner for the months during which a contract unit is leased to and occupied by an eligible family."

## FHVR UNIT 41-101

49.    In addition to its prior inspection required by federal regulation before executing the PBV HAP, and, upon information and belief, Defendant submitted its additional certification of all of FHVR's 42 units to HUD prior to entry of the PBV HAP contract. Specifically, federal regulation required Defendant to inspect Unit 41-101 before a tenant occupied the unit and, on or about August 11, 2021, Defendant certified that Unit 41 passed HUD's HQS requirements. A true and accurate copy of Defendant's HQS Inspection Report is attached hereto and incorporated herein as Exhibit F.

50.    On or about December 10, 2020, and November 21, 2021, a tenant ("Tenant") executed two separate lease agreements with FHVR in connection with Unit 41-101 (("Leases").  True and accurate copies of the Leases are attached hereto and incorporated herein as Exhibit G.

51.    On or about December 20, 2020, Tenant moved into FHVR Unit 41-101, with his spouse and one minor child.

52.    FHVR also executed Term Lease Agreements with other tenants who reside in other units located at FHVR's Property between the period beginning in 2020 and through the date of this Complaint.

53.    During the history of the Project, commencing from the date that certificates of occupancy were issued in 2019, five (5) units had tenants with children

under six years of age. Those children resided in units 4-201, 41-101 (a single family detached house), 3-301, 3-202, and 3-302.

54.     As of the date of this Complaint, only two units have children under six years of age, namely, Units 4-201 and 3-301. Two children under six years of age currently live in units at the Project.

55.     On or about September 28, 2021, the Tenant verbally informed FHVR's third-party property manager that one of his children who was under six years of age, Toddler A, had elevated blood lead levels.

56.     Other than the Tenant, no other tenant with children under six years of age has ever notified owner or owner's third-party property manager that any child had elevated blood levels.

57.      On or about September 28, 2021, FHVR's third-party property manager accompanied Tenant to Tenant's unit (Unit 41), and the third-party property manager noticed that someone had pulled a cord from a wall of the unit that exposed underlying paint.

58.     On or about September 29, 2021, FHVR's property manager at the time and a representative of the Defendant received from the Tenant the results of a blood test performed on Toddler A on or about September 23, 2021, related to the possibility that the exposed paint was lead-based. The blood test report noted that the results with respect to testing of lead-based paint could not be relied upon

because the test tubes may have contained lead, and the test was not approved by the United States Food and Drug Administration.

59.     Despite repeated written and verbal requests by FHVR's third party property manager, neither FHVR nor FHVR's third party property manager have received Toddler A's records from his medical healthcare provider, medical professional or health care professional demonstrating EBLL nor has FHVR received notice from the Lewis and Clark County Public Health Department, the county public health department with competent jurisdiction where Fort Harrison is located, or the VA, the owner of the Property, of any EBLL issue in a manner required by federal law and regulation.  No public health department or medical provider have ever provided FHVR or any of its property managers with any written notice regarding EBLL or the Blood Test regarding Toddler A or any other child.

60.     Since October 2021, FHVR has repeatedly asked the Tenant in writing and verbally to provide it with Toddler A's medical records to determine if, in fact, Toddler A has EBLL. The Tenant has refused to provide such records or authorization for FHVR to receive such records.

61.     FHVR informed the HUD PIH Field Office and OLHCHH that it was not successful in its attempts to obtain Toddler A's medical records from the Tenant. A true and correct copy of the notice to HUD is attached hereto and incorporated herein as Exhibit H.

62.    The only governmental entity that advised FHVR regarding Toddler A's EBLL lab test in writing is Defendant.  Defendant is a PHA and statutorily enabled housing credit allocator and has no statutory authority to undertake any duties as a medical provider or a public health department.  Further, upon information and belief, Defendant has not received confirmation from a public health department or a medical care provider of a child with EBLL at the Project.

### FHVR Voluntary Assessment and Mitigation Measures

63.    As a matter of law and federal regulation, FHVR has the legal authority to act voluntarily with respect to compliance with 24 C.F.R. Part 35, but, through the date of this Complaint, no federal law nor any part of 24 C.F.R. Part 35 required any action by FHVR.

64.    Notwithstanding any legal obligation and despite having no verification of EBLL, FHVR voluntarily undertook all risk assessments, interim controls, and mitigation steps as permitted by the LSHR for Unit 41-101.

65.    Moreover, despite the lack of medical verification, FHVR undertook interim controls, moved the Tenant and his family to a hotel, and later to a home rented from Airbnb, and thereafter began remediation work on the then vacant Unit 41-101.  The family was provided alternative housing at FHVR's expense until Unit 41 was cleared by a contractor certified under 40 C.F.R. Part 745 (related to environmental lead-based paint renovator and inspector certification) and 24 C.F.R.

Part 35 on or about January 17, 2022. A true and correct copy is attached hereto and incorporated herein as Exhibit I.

Defendant's Improper Inspections of the Property

66.    Upon information and belief, in 2022, several months after FHVR completed remediation and clearance on Unit 41-101, Tenant contacted Defendant and provided his minor child's lab results.    Despite one of Defendant's representatives being present at a meeting with Tenant in September of 2021 during which the same lab test was discussed, Defendant treated Tenant's non-compliant lab report as a new notice of potential EBLL. Thereafter, Defendant acted without legislative or regulatory authority, including undertaking an unlawful course of increased inspections.

67.    When Defendant has regulatory grounds to inspect more than one unit in compliance with federal regulation, Defendant must inspect a random sample of the units at Fort Harrison consisting of twenty percent (20%) of the units subject to the PBV HAP Contract at least biennially.

68.    Defendant is required to notify in writing FHVR before it undertakes a biennial inspection in compliance with the Biennial Inspection Rule by law and federal regulation.  FHVR never received such a notice.

69.    Notwithstanding its failure to provided legally required notice, and assuming Defendant had any authority to inspect units, on or about February 10 and

April 5, 2023, Defendant ignored existing federal regulations and unlawfully conducted inspections of 100% of the units.

70.     Defendant directed its inspectors to use Inspection Form HUD-52580-A, which is expressly limited to use for HCV, not PBV, inspections.

71.     The Defendant's PHA Administrative Plan for the 2022 years is silent regarding alternative inspection criteria of any kind, whether in the ordinary course or for verification.

72.     HUD inspection criteria for periodic inspections for existing PBV units is set forth at 24 C.F.R. § 983.103(e) ("Applicable HUD Inspection Criteria").

73.     After initial inspection of PBV units, PHAs must inspect units not more frequently than biennially under the Applicable HUD Inspection Criteria.

74.     Despite the fact that Unit 41-101 received its HQS inspection on August 11, 2021, Defendant unlawfully re-inspected before the required time period.

75.     Defendant advised FHVR in writing that it failed 100% of the units it inspected on February 10 and April 5, 2023, other than new construction units on HQS grounds.  However, Defendant unlawfully applied inapplicable 24 C.F.R Part 982 HQS to the Project instead of the applicable HQS standards set forth in 24 C.F.R Part 983 required by HUD's PBV regulations.

76.     Even if the Tenant reported a unit that Defendant could inspect because of the categories set forth in § 983.103(f) [Other Inspections], no part of 983.103(f)

authorized the Defendant to withhold PBV HAP for all rehabilitated units.  24 C.F.R. § 983.103(f).

77.     As of April 30, 2023, Defendant ceased making its required payments to FHVR under the HAP contract for at least 13 FHVR units, not just unit 41-101. Through June 2024, Defendant has failed to pay FHVR $107,185.46 in total for these units, pursuant to the PBV HAP Contract.

78.     Defendant has stated that its actions, including withholding HAP payments, were undertaken at HUD's direction.

79.     Upon information and belief, HUD has not and did not direct Defendant to cease paying its contractual obligations to FHVR pursuant to the PBV HAP Contract or direct any action by Defendant.

80.     In addition to the improper HQS inspections, between on or about April 5 and April 13, 2023, Defendant undertook additional inspections of the Project which it was not statutorily authorized by the PBV HAP Contract or federal or state law and regulations to undertake. Specifically, Defendant engaged a contractor, Thomas, Dean & Hoskins (TD&H") to carry out a Risk Assessment of the Project without legal authorization.  FHVR never consented to TD&H entering the Property in order to conduct an inspection or undertake a report.

81.     Defendant sent a "Notice to Residents of EPA Certified Lead Risk Assessment" on April 3, 2023, stating that risk assessments would be undertaken between April 5 and 13, 2023.

82.     During inspections conducted without FHVR's consent between April 5 and 13, 2023, Defendant's contractor, TD&H, entered tenant units frequently and without owner or, in some cases, tenant's permission or consent.

83.     On or about May 4, 2023, Defendant's contractor TD&H Engineering issued a Lead Risk Assessment Report.  While this report indicated certain lead-based paint issues, Defendant did not have the right to conduct this inspection. Further, federal law does not require remediation in units where no child under six years of age resides.

<u>The Potential Source of Lead on the Property</u>

84.     FHVR received a Lead in Soil Survey from Northern Industrial Hygiene on or about December 20, 2021, showing elevated lead levels in the soil in certain areas on the Property. The buildings where lead was elevated were buildings 11, 12, 14, and 42, but not Unit 41-101, where Tenant and his family resided.  A true and correct copy is attached hereto and incorporated herein as Exhibit J.

85.     Northern Industrial Hygiene conducted a lead dust clearance retesting of Unit 41 on September 27, 2022, at the request of FHVR. The reports stated that

the paint stabilization activities performed by FHVR were successful. A true and accurate copy of that report is attached as Exhibit K.

86.     On or about October 15, 2023, FHVR voluntarily engaged a second company, New Fields Companies, LLC, a company certified to undertake soil risk assessment, to undertake a second environmental investigation. A true and correct copy is attached hereto and incorporated herein as Exhibit L.

87.     This second environmental investigation disclosed that any presence of lead on the FHVR property is in certain areas of exposed soil around the property collected from dripline areas.

88.     It is possible that the lead in the soil is due to water runoff from nearby VA-owned garages on ground that is not subject to the Ground Lease or because the VA failed to remediate lead when it provided possession to FHVR.

89.     The VA owns the land upon which the garages are located and has admitted that there is lead in the soil on the Property, on the garages, and in the soil surrounding the garages.

90.     The VA had an affirmative duty to remediate all hazardous substances under the Ground Lease that existed prior to the execution of the Ground Lease prior to providing FHVR with possession of the real Property, which it still owns.

<u>Defendant's Refusal to Pay Under the PBV HAP Contract</u>

91.    Despite the fact that the lead may be leaching from the soil on VA-owned Property, and therefore not FHVR's responsibility to remedy, and that FHVR never received the notifications that were required to be sent by Defendant, FHVR still undertook appropriate remedial measures to address the lead issue.

92.    Defendant has (a) trespassed on FHVR property and conducted its own risk assessment and other tests without consent, (b) failed to communicate or provide FHVR with the medical records from the tenant in Unit 41-101 which would be necessary in order for LSHR obligations and duties to be imposed upon FHVR, and (c) unlawfully withheld HAP payments for units that have no children under six years of age, and no relationship to the EBLL issue raised with respect to Unit 41-101.

93.    On or about May 16, 2024, Defendant notified FHVR that it would fully abate all contractually required HAP payments to FHVR as of June 30, 2024, notwithstanding the fact that Defendant has failed and refused to make contractually-required HAP payments to FHVR on at least 13 units since April 2023. A true and correct copy of the letter from Defendant to FHVR is attached hereto and incorporated herein as Exhibit M.

94.    On or about May 23, 2024, Defendant notified FHVR's current third-party property management company that Defendant will cease processing any new

admissions at FVHR due to the issues relating to Unit 41-101, despite the fact that

Unit 41-101 has been certified as compliant with the requirements of 24 CFR Part

35. A true and correct copy of the email from Defendant to FHVR is attached hereto

and incorporated herein as Exhibit N.

## COUNT I
## BREACH OF CONTRACT

95.     Plaintiff realleges and incorporates into this cause of action the

allegations of paragraphs 1 through 94, as if the same were set out at length herein.

96.     The PBV HAP Contract is a valid and enforceable contract, supported

by lawful consideration.

97.     All conditions precedent to Plaintiff's enforcement of its rights under

the PBV HAP contract have occurred.

98.     Part f of Section 1 of the PBV HAP Contract between Defendant and

Fort Harrison required that "during the term of the PBV HAP contract, the PHA

shall make housing assistance payments to the owner for the months during which a

contract unit is leased to and occupied by an eligible family."

99.     Defendant has not provided housing assistance payments for Unit 41-

101 and an additional twelve (12) units other than Unit 41 since April of 2023.

100.    Defendant breached its duty under the PBV HAP contract when it

stopped making housing assistance payments to FHVR during the term of the PBV

HAP contract.

101.    Defendant has no lawful authority in which to cease making HAP to FHVR as a matter for federal law and regulation.

102.    Defendant's breach proximately and directly caused Plaintiff's damages.

103.    As a result of Defendant's breach of the PBV HAP Contract, Defendant owes for all required payments under the HAP contract in an amount to be determined at trial but not less than $107,185.46.

## COUNT II
## DECLARATORY JUDGMENT

104.    Plaintiff realleges and incorporates into this cause of action the allegations of paragraphs 1 through 103, as if the same were set out at length herein.

105.    The HQS standards for HCV differ from those for PBV.

106.    HCV HQS standards are set forth in 24 C.F.R. § 982.401(j) and are inapplicable as a matter of federal law and regulation to PBV developments, including the Project.

107.    PBV HQS standards are set forth in 24 C.F.R. Part 983 and (a) expressly state that HCV HQS standards relating to lead hazard do not apply or (b) in 24 C.F.R. § 983.2(c) expressly refers to those provisions in 24 C.F.R. Part 982 that are inapplicable to 24 C.F.R. Part 983, including the lead-based paint performance requirements set forth at 24 C.F.R. § 982.401(j).

108.   Defendant has erroneously applied the incorrect HQS standards and has acted in contravention of the applicable HUD rules regarding its role as a PHA regarding lead-based paint issues at the Project.

109.   24 C.F.R. Part 982 HQS standards apply to individual dwelling units, not entire properties.   24 C.F.R. Part 983 HQS standards contemplate that discrete units may, from time to time, not meet HQS.   Defendant has harmed FHVR by breaching the PBV HAP Contract based on alleged violations of Part 982, a regulation that HUD expressly states is inapplicable in the context of PBV units and PBV HAP.

110.   Unless there is a life-threatening condition in the unit, which is not applicable here, under Part 983, Defendant is not authorized to withhold HAP related to units where no children under six years of age reside.

111.   An actual controversy exists between FHVR and Defendant, and FHVR seeks a declaration from the Court pursuant to 28 U.S.C. § 2201, regarding the proper application of HQS and the LSHR rules to the Project.

112.   Therefore, FHVR requests a judicial declaration of the parties' rights, duties, and obligations under the PBV HAP contract and the applicable federal laws.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests judgment against the Defendant and further Plaintiff prays for:

a. On Count I, the total sum of past due rent and monetary charges due under the HAP Contract through the date of this Complaint plus prejudgment interest in an amount to be determined at trial;

b. On Count II, a declaratory judgment in FHVR's favor; and

c. All other, further, and different legal and equitable relief against the Defendant as necessary and appropriate to effectuate the Court's rulings and judgment, and/or as the Court otherwise deems just and equitable.

Dated this 11th day of June, 2024

CROWLEY FLECK PLLP

By: *Jeffrey M. Roth*
    Jeffrey M. Roth
    Michael Green
    305 South 4th St E, Suite 100
    Missoula, MT 59801

*Attorneys for Plaintiff Fort Harrison Veterans Residences, LP*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served today via the Court's

CM/ECF system on all counsel of record.

/s/ *Jeffrey M. Roth*