OMB Approval No. 2577-0169
(exp. 04/30/2018)

---

**U.S. Department Of Housing And Urban Development**
**Office of Public and Indian Housing**

### SECTION 8 PROJECT-BASED VOUCHER PROGRAM

### PBV AGREEMENT TO ENTER INTO
### HOUSING ASSISTANCE PAYMENTS CONTRACT

### NEW CONSTRUCTION OR REHABILITATION

### PART I

---

This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless that collection displays a valid OMB control number. Assurances of confidentiality are not provided under this collection.

## 1.1 Parties

This Agreement to Enter into Housing Assistance Payments Contract ("Agreement") is entered into between: Montana Department of Commerce _____ ("PHA") and

Fort Harrison Veterans Residences Limited Partnership _____ ("owner").

## 1.2 Purpose

The owner agrees to develop the Housing Assistance Payments Contract ("HAP contract") units to in accordance with Exhibit B to comply with Housing Quality Standards ("HQS"), and the PHA agrees that, upon timely completion of such development in accordance with the terms of the Agreement, the PHA will enter into a HAP contract with the owner of the contract units.

## 1.3 Contents of Agreement

This Agreement consists of Part I, Part II and the following Exhibits:

EXHIBIT A: The approved owner's PBV proposal. (Selection of proposals must be in accordance with 24 CFR 983.51.)

---

HUD 52531A
Agreement, Part 1 of 2

Previous Editions are obsolete

Project-based Voucher Program

EXHIBIT B: Description of work to be performed under this Agreement, including:

- if the Agreement is for rehabilitation of units, this exhibit must include the rehabilitation work write-up and, where the PHA has determined necessary, specifications and plans.
- if the Agreement is for new construction of units, the work description must include the working drawings and specifications.
- any additional requirements beyond HQS relating to quality, design and architecture that the PHA requires.
- work items resulting from compliance with the design and construction requirements of the Fair Housing Act and implementing regulations at 24 CFR 100.205 and the accessibility requirements under section 504 of the Rehabilitation Act of 1973 and implementing regulations at 24 CFR 8.22 and 8.23.

EXHIBIT C: Description of housing, including:

- project site.
- total number of units in project covered by this Agreement.
- location of contract units on site.
- number of contract units by area (size) and number of bedrooms and bathrooms.
- services, maintenance, or equipment to be supplied by the owner without charges in addition to the rent to owner.
- utilities available to the contract units, including a specification of utility services to be paid by owner (without charges in addition to rent) and utility services to be paid by the tenant.
- estimated initial rent to owner for the contract units.

EXHIBIT D: The HAP contract.

## 1.4    Significant Dates

A.     Effective Date of the Agreement:  The Agreement must be executed promptly after PHA notice of proposal selection to the owner has been given.  The PHA may not enter this Agreement with the owner until any required subsidy layering review has been performed and an environmental review has been satisfactorily completed in accordance with HUD requirements.

B.     A project may either be a single-stage or multi-stage project. A single-stage project will have the same Agreement effective date for all contract units.  A multi-stage project will have separate effective dates for each stage.

---

HUD 52531A
Agreement, Part 1 of 2

Previous Editions are obsolete

Project-based Voucher Program

☒ **Single-stage project**

i.   Effective Date for all contract units: <u>5/11/2017</u>

ii.  Date of Commencement of the Work: The date for commencement of work is not later than _____ 7 _____ calendar days after the effective date of this Agreement.

iii. Time for Completion of Work:  The date for completion of the work is not later than _____ 547 _____ calendar days after the effective date of this Agreement.

☐ **Multi-Stage Project**

Enter the information for each stage upon execution of the Agreement for the corresponding stage.

| STAGE | NUMBER OF UNITS | EFFECTIVE DATE | DATE OF COMMENCEMENT OF WORK | TIME FOR COMPLETION OF WORK |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

## 1.5   Nature of the Work

☒ This Agreement is for **New Construction** of units to be assisted by the project-based voucher program.

☒ This Agreement is for **Rehabilitation** of units to be assisted by the project-based voucher program.

Previous Editions are obsolete

HUD 52531A
Agreement, Part 1 of 2

Project-based Voucher Program

## 1.6    Schedule of Completion

A.    Timely Performance of Work: The owner agrees to begin work no later than the date for commencement of work as stated in section 1.4. In the event the work is not commenced, diligently continued and completed as required under this Agreement, the PHA may terminate this Agreement or take other appropriate action. The owner agrees to report promptly to the PHA the date work is commenced and furnish the PHA with progress reports as required by the PHA.

B.    Time for Completion: All work must be completed no later than the end of the period stated in section 1.4. Where completion in stages is provided for, work related to units included in each stage shall be completed by the stage completion date and all work on all stages must be completed no later than the end of the period stated in section 1.4.

C.    Delays: If there is a delay in the completion due to unforeseen factors beyond the owner's control as determined by the PHA, the PHA agrees to extend the time for completion for an appropriate period as determined by the PHA in accordance with HUD requirements.

## 1.7    Changes in Work

A.    The owner must obtain prior PHA approval for any change from the work specified in Exhibit B which would alter the design or quality of the rehabilitation or construction. The PHA is not required to approve any changes requested by the owner. PHA approval of any change may be conditioned on establishment of a lower initial rent to owner as determined by PHA in accordance with HUD requirements.

B.    If the owner makes any changes in the work without prior PHA approval, the PHA may establish lower initial rents to owner as determined by the PHA in accordance with HUD requirements.

C.    The PHA may inspect the work during rehabilitation or construction to ensure that work is proceeding on schedule, is being accomplished in accordance with the terms of the Agreement, meets the level of material described in Exhibit B and meets typical levels of workmanship for the area.

HUD 52531A
Agreement, Part 1 of 2

Previous Editions are obsolete

Project-based Voucher Program

## 1.8    Work Completion

A.    Conformance with Exhibit B:  The work must be completed in accordance with Exhibit B.  The owner is solely responsible for completion of the work.

B.    Evidence of Completion:  When the work in completed, the owner must provide the PHA with the following:

1.    A certification by the owner that the work has been completed in accordance with the HQS and all requirements of this Agreement.

2.    A certification by the owner that the owner has complied with labor standards and equal opportunity requirements in the development of the housing.  (See 24 CFR 983.155(b)(1)(ii).)

3.    Additional Evidence of Completion:  At the discretion of the PHA, or as required by HUD, the owner may be required to submit additional documentation as evidence of completion of the housing.  Check the following that apply:

☐    A certificate of occupancy or other evidence that the contract units comply with local requirements.

☒    An architect or developer's certification that the housing complies with:

☒    the HQS;

☒    State, local or other building codes;

☒    Zoning;

☒    The rehabilitation work write-up for rehabilitated housing;

☒    The work description for newly constructed housing; or

☒    Any additional design or quality requirements pursuant to this Agreement.

---

Page 5 of 17

HUD 52531A
Agreement, Part 1 of 2

Project-based Voucher Program

## 1.9 Inspection and Acceptance by the PHA of Completed Contract Units

A.   Completion of Contract Units: Upon receipt of owner notice of completion of contract units, the PHA shall take the following steps:

    1.   Review all evidence of completion submitted by owner.

    2.   Inspect the units to determine if the housing has been completed in accordance with this Agreement, including compliance with the HQS and any additional requirements imposed by the PHA under this Agreement.

B.   Non-Acceptance: If the PHA determines the work has not been completed in accordance with this Agreement, including non-compliance with the HQS, the PHA shall promptly notify the owner of this decision and the reasons for the non-acceptance. The parties must not enter into the HAP contract at this point. However, work deficiencies may be corrected in accordance with Section 1.10 of this Agreement.

C.   Acceptance: If the PHA determines that the work has been completed in accordance with this Agreement, and that the owner has submitted all required evidence of completion, the PHA must submit the HAP contract for execution by the owner and must then execute the HAP contract.

## 1.10 Acceptance Where Work Deficiencies Exist

A.   If the PHA determines that work deficiencies exist, the PHA shall determine whether and to what extent the deficiencies are correctable, whether the units will be accepted after correction of the deficiencies, and the requirements and procedures (consistent with HUD requirements) for such correction and acceptance of contract units. The PHA shall notify the owner of the PHA's decision.

B.   Completion in Stages: When the units will be completed in stages, the procedures of this section shall apply to each stage.

## 1.11 Execution of HAP Contract

A.   Time and Execution: Upon acceptance of the units by the PHA, the owner and the PHA execute the HAP contract.

---

HUD 52531A
Agreement, Part 1 of 2

Previous Editions are obsolete

Project-based Voucher Program

B.  Completion in Stages: When the units will be completed in stages, the number and types of units in each stage, and the initial rents to owner for such units, shall be separately shown in the HAP contract for each stage. Upon acceptance of the first stage, the owner shall execute the HAP contract and the signature block provided in the HAP contract for that stage. Upon acceptance of each subsequent stage, the owner shall execute the signature block provided in the HAP contract for such stage.

C.  Form of HAP contract: The terms of the HAP contract shall be provided in Exhibit D of this Agreement. There shall be no change in the terms of the HAP contract unless such change is approved by HUD headquarters. Prior to execution by the owner, all blank spaces in the HAP contract shall be completed by the PHA.

D.  Survival of Owner Obligations: Even after execution of the HAP contract, the owner shall continue to be bound by all owner obligations under the Agreement.

## 1.12   Initial Determination of Rents

A.  The estimated initial rent to owner shall be established in Exhibit C of this Agreement.

B.  The initial rent to owner is established at the beginning of the HAP contract term.

C.  The estimated and initial contract rents for each unit may in no event exceed the amount authorized in accordance with HUD requirements. Where the estimated or the initial rent to owner exceeds the amount authorized under HUD requirements, the PHA shall establish a lower estimated or initial rent to owner (as applicable), in accordance with HUD requirements.

## 1.13   Uniform Relocation Act

A.  A displaced person must be provided relocation assistance at the levels described in and in accordance with the requirements of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA) (42 U.S.C. 4201-4655) and implementing regulations at 49 CFR part 24.

B.  The cost of required relocation assistance may be paid with funds provided by the owner, or with local public funds, or with funds available from other sources. Payment of relocation assistance must be in accordance with HUD requirements.

HUD 52531A
Agreement, Part 1 of 2

Previous Editions are obsolete

Project-based Voucher Program

C       The acquisition of real property for a project to be assisted under the project-based voucher program is subject to the URA and 49 CFR part 24, subpart B.

D.      The PHA must require the owner to comply with the URA and 49 CFR part 24.

E.      In computing a replacement housing payment to a residential tenant displaced as a direct result of privately undertaken rehabilitation or demolition of the real property, the term "initiation of negotiations" means the execution of the Agreement between the owner and the PHA.

## 1.14   Protection of In-Place Families

A.      In order to minimize displacement of in-place families, if a unit to be placed under HAP contract is occupied by an eligible family on the proposal selection date, the in-place family must be placed on the PHA's waiting list (if it is not already on the list) and, once its continued eligibility is determined, given an absolute selection preference and referred to the project owner for an appropriately sized unit in the project.

B.      This protection does not apply to families that are not eligible to participate in the program on the proposal selection date.

C.      The term "in-place family" means an eligible family residing in a proposed contract unit on the proposal selection date.

D.      Assistance to in-place families may only be provided in accordance with HUD requirements.

## 1.15   Termination of Agreement and HAP Contract

The Agreement or HAP contract may be terminated upon at least 30 days notice to the owner by the PHA or HUD if the PHA or HUD determines that the contract units were not eligible for selection in conformity with HUD requirements.

## 1.16   Rights of HUD if PHA Defaults Under Agreement

If HUD determines that the PHA has failed to comply with this Agreement, or has failed to take appropriate action, to HUD's satisfaction or as directed by HUD, for enforcement of the PHA's rights under this Agreement, HUD may assume the PHA's rights and obligations under the Agreement, and may perform the obligations and enforce the rights of the PHA under the Agreement. HUD will, if it determines that the owner is not in

---

HUD 52531A
Agreement, Part 1 of 2

Previous Editions are obsolete

Project-based Voucher Program

default, pay annual contributions for the purpose of providing housing assistance payments with respect to the dwelling unit(s) under this Agreement for the duration of the HAP contract.

## 1.17 Owner Default and PHA Remedies

A.    Owner Default

Any of the following is a default by the owner under the Agreement:

1.    The owner has failed to comply with any obligation under the Agreement.

2.    The owner has violated any obligation under any other housing assistance payments contract under Section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f).

3.    The owner has committed any fraud or made any false statement to the PHA or HUD in connection with the Agreement.

4.    The owner has committed fraud, bribery or any other corrupt or criminal act in connection with any Federal housing assistance program.

5.    If the property where the contract units are located is subject to a lien or security interest securing a HUD loan or a mortgage insured by HUD and:

A.    The owner has failed to comply with the regulations for the applicable mortgage insurance or loan program, with the mortgage or mortgage note, or with the regulatory agreement; or

B.    The owner has committed fraud, bribery or any other corrupt or criminal act in connection with the HUD loan or HUD-insured mortgage.

6.    The owner has engaged in any drug-related criminal activity or any violent criminal activity.

B.    PHA Remedies

1.    If the PHA determines that a breach has occurred, the PHA may exercise any of its rights or remedies under the Agreement.

---

HUD 52531A
Agreement, Part 1 of 2

Previous Editions are obsolete

Project-based Voucher Program

2.    The PHA must notify the owner in writing of such determination. The notice by the PHA to the owner may require the owner to take corrective action (as verified by the PHA) by a time prescribed in the notice.

3.    The PHA's rights and remedies under the Agreement include, but are not limited to: (i) terminating the Agreement; and (ii) declining to execute the HAP contract for some or all of the units.

C.    PHA Remedy is not Waived

The PHA's exercise or non-exercise of any remedy for owner breach of the Agreement is not a waiver of the right to exercise that remedy or any other right or remedy at any time.

## 1.18   PHA and Owner Relation to Third Parties

A.    Selection and Performance of Contractor

1.    The PHA has not assumed any responsibility or liability to the owner, or any other party for performance of any contractor, subcontractor or supplier, whether or not listed by the PHA as a qualified contractor or supplier under the program. The selection of a contractor, subcontractor or supplier is the sole responsibility of the owner and the PHA is not involved in any relationship between the owner and any contractor, subcontractor or supplier.

2.    The owner must select a competent contractor to undertake rehabilitation or construction. The owner agrees to require from each prospective contractor a certification that neither the contractor nor its principals is presently debarred, suspended, proposed for debarment, declared ineligible, or otherwise excluded from participation in contracts by any Federal department or agency or the Comptroller General. The owner agrees not to award contracts to, otherwise engage in the service of, or fund any contractor that does not provide this certification.

B.    Injury Resulting from Work under the Agreement:  The PHA has not assumed any responsibility for or liability to any person, including a worker or a resident of the unit undergoing work pursuant to this Agreement, injured as a result of the work or as a result of any other action or failure to act by the owner, or any contractor, subcontractor or supplier.

Previous Editions are obsolete

HUD 52531A
Agreement, Part 1 of 2

Project-based Voucher Program

C.  Legal Relationship: The owner is not the agent of the PHA and this Agreement does not create or affect any relationship between the PHA and any lender to the owner or any suppliers, employees, contractor or subcontractors used by the owner in the implementation of the Agreement.

D.  Exclusion of Third Party Claims:  Nothing in this Agreement shall be construed as creating any right of any third party (other than HUD) to enforce any provision of this Agreement or the HAP contract, or to assert any claim against HUD, the PHA or the owner under the Agreement or the HAP contract.

E.   Exclusion of Owner Claims against HUD:  Nothing in this Agreement shall be construed as creating any right of the owner to assert any claim against HUD.

## 1.19 PHA-Owned  Units

Notwithstanding Section 1.18 of this Agreement, a  PHA may own units assisted under the project-based voucher program, subject to the special requirements in 24 CFR 983.59 regarding PHA-owned units.

## 1.20  Conflict of Interest

A.  Interest of Members, Officers, or Employees of PHA, Members of Local Governing Body, or Other Public Officials

1.  No present or former member or officer of the PHA (except tenant-commissioners), no employee of the PHA who formulates policy or influences decisions with respect to the housing choice voucher program or project-based voucher program, and no public official or member of a governing body or State or local legislator who exercises functions or responsibilities with respect to these programs, shall have any direct or indirect interest, during his or her tenure or for one year thereafter, in the Agreement or HAP contract.

2.  HUD may waive this provision for good cause.

B.  Disclosure

The owner has disclosed to the PHA any interest that would be a violation of the Agreement or HAP contract. The owner must fully and promptly update such disclosures.

---

HUD 52531A
Agreement, Part 1 of 2

Previous Editions are obsolete

Project-based Voucher Program

## 1.21 Interest of Member or Delegate to Congress

No member of or delegate to the Congress of the United States of America or resident-commissioner shall be admitted to any share or part of the Agreement or HAP contract or to any benefits arising from the Agreement or HAP contract.

## 1.22 Transfer of the Agreement, HAP Contract or Property

A. PHA Consent to Transfer

The owner agrees that the owner has not made and will not make any transfer in any form, including any sale or assignment, of the Agreement, HAP contract or the property without the prior written consent of the PHA. A change in ownership in the owner, such as a stock transfer or transfer of the interest of a limited partner, is not subject to the provisions of this section. Transfer of the interest of a general partner is subject to the provisions of this section.

B. Procedure for PHA Acceptance of Transferee

Where the owner requests the consent of the PHA for a transfer in any form, including any sale or assignment, of the Agreement, the HAP contract or the property, the PHA must consent to a transfer of the Agreement or HAP contract if the transferee agrees in writing (in a form acceptable to the PHA) to comply with all the terms of the Agreement and HAP contract, and if the transferee is acceptable to the PHA. The PHA's criteria for acceptance of the transferee must be in accordance with HUD requirements.

C. When Transfer is Prohibited

The PHA will not consent to the transfer if any transferee, or any principal or interested party is debarred, suspended subject to a limited denial of participation, or otherwise excluded under 2 CFR part 2424, or is listed on the U.S. General Services Administration list of parties excluded from Federal procurement or nonprocurement programs.

## 1.23 Exclusion from Federal Programs

A. Federal Requirements

The owner must comply with and is subject to requirements of 2 CFR part 2424.

---

HUD 52531A
Agreement, Part 1 of 2

Previous Editions are obsolete

Project-based Voucher Program

B.  Disclosure

The owner certifies that:

1.  The owner has disclosed to the PHA the identity of the owner and any
    principal or interested party.

2.  Neither the owner nor any principal or interested party is listed on the U.S.
    General Services Administration list of parties excluded from Federal
    procurement and nonprocurement programs; and none of such parties are
    debarred, suspended, subject to a limited denial of participation or
    otherwise excluded under 2 CFR part 2424.

## 1.24  Lobbying Certifications

A.  The owner certifies, to the best of owner's knowledge and belief, that:

1.  No Federally appropriated funds have been paid or will be paid, by or on
    behalf of the owner, to any person for influencing or attempting to
    influence an officer or employee of any agency, a Member of Congress, an
    officer or employee of Congress, or an employee of a Member of
    Congress in connection with the awarding of the Agreement or HAP
    contract, or the extension, continuation, renewal, amendment, or
    modification of the HAP contract.

2.  If any funds other than Federally appropriated funds have been paid or
    will be paid to any person for influencing or attempting to influence an
    officer or employee of any agency, a Member of Congress, an officer or
    employee of Congress, or an employee of a Member of Congress in
    connection with the Agreement or HAP contract, the owner must complete
    and submit Standard Form-LLL, "Disclosure Form to Report Lobbying,"
    in accordance with its instructions.

B.  This certification by the owner is a prerequisite for making or entering into this
    transaction imposed by 31 U.S.C. 1352.

---

HUD 52531A
Agreement, Part 1 of 2

Previous Editions are obsolete

Project-based Voucher Program

## 1.25   Subsidy Layering

A.    Owner Disclosure

The owner must disclose to the PHA, in accordance with HUD requirements, information regarding any related assistance from the Federal Government, a State, or a unit of general local government, or any agency or instrumentality thereof, that is made available or is expected to be made available with respect to the contract units. Such related assistance includes, but is not limited to, any loan, grant, guarantee, insurance, payment, rebate, subsidy, credit, tax benefit, or any other form of direct or indirect assistance.

B.    Limit of Payments

Housing assistance payments under the HAP contract must not be more than is necessary, as determined in accordance with HUD requirements, to provide affordable housing after taking account of such related assistance.  The PHA will adjust in accordance with HUD requirements the amount of the housing assistance payments to the owner to compensate in whole or in part for such related assistance.

## 1.26   Prohibition of Discrimination

A.    The owner may not refuse to lease contract units to, or otherwise discriminate against, any person or family in leasing of a contract unit, because of race, color, religion, sex, national origin, disability, age or familial status.

B.    The owner must comply with the following requirements:  The Fair Housing Act (42 U.S.C. 3601–19) and implementing regulations at 24 CFR part 100 *et seq.* ; Executive Order 11063, as amended by Executive Order 12259 (3 CFR, 1959– 1963 Comp., p. 652 and 3 CFR, 1980 Comp., p. 307) (Equal Opportunity in Housing Programs) and implementing regulations at 24 CFR part 107; title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d-2000d-4) (Nondiscrimination in Federally Assisted Programs) and implementing regulations at 24 CFR part 1; the Age Discrimination Act of 1975 (42 U.S.C. 6101–6107) and implementing regulations at 24 CFR part 146; section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) and implementing regulations at part 8 of this title; title II of the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.* ; 24 CFR part 8; section 3 of the Housing and Urban Development Act of 1968 (12 U.S.C. 1701u) and implementing regulations at 24 CFR part 135; Executive Order 11246, as amended by Executive Orders 11375, 11478, 12086, and 12107 (3 CFR, 1964–

---

Previous Editions are obsolete

1965 Comp., p. 339; 3 CFR, 1966–1970 Comp., p. 684; 3 CFR, 1966–1970 Comp., p. 803; 3 CFR, 1978 Comp., p. 230; and 3 CFR, 1978 Comp., p. 264, respectively) (Equal Employment Opportunity Programs) and implementing regulations at 41 CFR chapter 60; Executive Order 11625, as amended by Executive Order 12007 (3 CFR, 1971–1975 Comp., p. 616 and 3 CFR, 1977 Comp., p. 139) (Minority Business Enterprises); Executive Order 12432 (3 CFR, 1983 Comp., p. 198) (Minority Business Enterprise Development); and Executive Order 12138, as amended by Executive Order 12608 (3 CFR, 1977 Comp., p. 393 and 3 CFR, 1987 Comp., p. 245) (Women's Business Enterprise).

C.  The PHA and the owner must cooperate with HUD in the conducting of compliance reviews and complaint investigations pursuant to all applicable civil rights statutes, Executive Orders, and all related rules and regulations.

## 1.27  PHA and HUD Access to Premises and Owner Records

A.  The owner must furnish any information pertinent to this Agreement as may be reasonably required from time to time by the PHA or HUD. The owner shall furnish such information in the form and manner required by the PHA or HUD.

B.  The owner must permit the PHA or HUD or any of their authorized representatives to have access to the premises during normal business hours and, for the purpose of audit and examination, to have access to any books, documents, papers and records of the owner to the extent necessary to determine compliance with the Agreement.

## 1.28  Notices and Owner Certifications

A.  Where the owner is required to give any notice to the PHA pursuant to this Agreement, such notice shall be in writing and shall be given in the manner designated by the PHA.

B.  Any certification or warranty by the owner pursuant to the Agreement shall be deemed a material representation of fact upon which reliance was placed when this transaction was entered into.

---

HUD 52531A
Agreement, Part 1 of 2

Previous Editions are obsolete

Project-based Voucher Program

## 1.29 HUD Requirements

A.   The Agreement and the HAP contract shall be interpreted and implemented in accordance with all statutory requirements, and with all HUD requirements, including amendments or changes in HUD requirements.  The owner agrees to comply with all such laws and HUD requirements

B.   HUD requirements are requirements that apply to the project-based voucher program.  HUD requirements are issued by HUD Headquarters as regulations, Federal Register notices or other binding program directives.

## 1.30 Applicability of Part II provisions – Check all that apply

☒ Training, Employment and Contracting Opportunities
Section 2.1 applies if the total of the contract rents for all units under the proposed HAP contract, over the maximum term of the contract, is more than $200,000.

☒ Equal Employment Opportunity
Section 2.2 only applies to construction contracts of more than $10,000.

☒ Labor Standards Requirements
Sections 2.4, 2.8 and 2.10 apply when this Agreement covers nine or more units.

☐ Flood Insurance
Section 2.11 applies if units are located in areas having special flood hazards and in which flood insurance is available under the National Flood Insurance Program.

HUD 52531A
Agreement, Part 1 of 2

Previous Editions are obsolete

Project-based Voucher Program

## EXECUTION OF THE AGREEMENT

### PUBLIC HOUSING AGENCY

Name (Print) _Bruce Brensdal_

By:_____

Signature of Authorized Representative

Official title (Print): _Administration_

Date: _5-5-17_


### OWNER

Name (Print) Ft. Harrison Veterans Residences Limited Partnership

By:_____

Signature of Authorized Representative

Official Title (Print): Don Paxton

Date: _5-5.17_


---

Previous Editions are obsolete

Page 17 of 17

HUD 52531A
Agreement, Part 1 of 2

Project-based Voucher Program

OMB Approval No. 2577–0169
(exp. 07/31/2022)

**U.S. Department of Housing and Urban Development
Office of Public and Indian Housing**

**SECTION 8 PROJECT-BASED VOUCHER PROGRAM
HOUSING ASSISTANCE PAYMENTS CONTRACT**

**NEW CONSTRUCTION OR REHABILITATION**

**PART 1 OF HAP CONTRACT**

Public reporting burden for this collection of information is estimated to average 2 hours. This includes the time for collecting, reviewing and reporting the data. The information is being collected as required by 24 CFR 983.202, which requires the PHA to enter into a HAP contract with the owner to provide housing assistance payments for eligible families. This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless that collection displays a valid OMB control number. Assurances of confidentiality are not provided under this collection.

Privacy Act Statement. HUD is committed to protecting the privacy of individuals' information stored electronically or in paper form, in accordance with federal privacy laws, guidance, and best practices. HUD expects its third-party business partners, including Public Housing Authorities, who collect, use maintain, or disseminate HUD information to protect the privacy of that information in Accordance with applicable law.

1. **CONTRACT INFORMATION**

a. **Parties**

This housing assistance payments (HAP) contract is entered into between:

Montana Department of Commerce _____ ( PHA) and

Fort Harrison's Veterans Limited Partnership _____ (owner).

b. **Contents of contract**

The HAP contract consists of Part 1, Part 2, and the contract exhibits listed in paragraph c.

c. **Contract exhibits**

The HAP contract includes the following exhibits:

EXHIBIT A:  TOTAL NUMBER OF UNITS IN PROJECT COVERED BY

OMB Approval No. 2577–0169
(exp. 07/31/2022)

THIS HAP CONTRACT; INITIAL RENT TO OWNER; AND DESCRIPTION OF THE CONTRACT UNITS. (See 24 CFR 983.203 for required items.) If this is a multi-stage project, this exhibit must include a description of the units in each completed phase.

EXHIBIT B: SERVICES, MAINTENANCE AND EQUIPMENT TO BE PROVIDED BY THE OWNER WITHOUT CHARGES IN ADDITION TO RENT TO OWNER

EXHIBIT C: UTILITIES AVAILABLE IN THE CONTRACT UNITS, INCLUDING A LISTING OF UTILITIY SERVICES TO BE PAID BY THE OWNER (WITHOUT CHARGES IN ADDITION TO RENT TO OWNER) AND UTILITIES TO BE PAID BY THE TENANTS

EXHIBIT D: FEATURES PROVIDED TO COMPLY WITH PROGRAM ACCESSIBILITY FEATURES OF SECTION 504 OF THE REHABILITATION ACT OF 1973

ADDITIONAL EXHIBITS

**d. Single-Stage and Multi-Stage Contracts (place a check mark in front of the applicable project description).**

___ **Single-Stage Project**

This is a single-stage project. For all contract units, the effective date of the HAP contract is: _____ .

✓ **Multi-Stage Project**

This is a multi-stage project. The units in each completed stage are designated in Exhibit A.

The PHA enters the effective date for each stage after completion and PHA acceptance of all units in that stage. The PHA enters the effective date for each stage in the "Execution of HAP contract for contract units completed and accepted in stages" (starting on page 10).

The annual anniversary date of the HAP contract for all contract units in this multi-stage project is the anniversary of the effective date of the HAP

OMB Approval No. 2577–0169
(exp. 07/31/2022)

contract for the contract units included in the first stage. The expiration date of the HAP contract for all of the contract units completed in stages must be concurrent with the end of the HAP contract term for the units included in the first stage (see 24 CFR 983.206(c)).

### e. Term of the HAP contract

#### 1. Beginning of term

The PHA may not enter into a HAP contract for any contract unit until the PHA (or an independent entity, as applicable) has determined that the unit meets PBV inspection requirements. The term of the HAP contract for any unit begins on the effective date of the HAP contract.

#### 2. Length of initial term

a. Subject to paragraph 2.b, the initial term of the HAP contract for any contract units is: 20 years _____.

b. The initial term of the HAP contract for any unit may not be less than one year, nor more than twenty years.

#### 3. Extension of term

The PHA and owner may agree to enter into an extension of the HAP contract at the time of initial HAP contract execution, or any time prior to expiration of the contract. Any extension, including the term of such extension, must be in accordance with HUD requirements. A PHA must determine that any extension is appropriate to achieve long-term affordability of the housing or expand housing opportunities.

#### 4. Requirement for sufficient appropriated funding

a. The length of the initial term and any extension term shall be subject to availability, as determined by HUD, or by the PHA in accordance with HUD requirements, of sufficient appropriated funding (budget authority), as provided in appropriations acts and in the PHA's annual contributions contract (ACC) with HUD, to make full payment of housing assistance payments due to the owner for any contract year in accordance with the HAP contract.

OMB Approval No. 2577–0169
(exp. 07/31/2022)

    b.    The availability of sufficient funding must be determined by HUD or by the PHA in accordance with HUD requirements. If it is determined that there may not be sufficient funding to continue housing assistance payments for all contract units and for the full term of the HAP contract, the PHA has the right to terminate the HAP contract by notice to the owner for all or any of the contract units. Such action by the PHA shall be implemented in accordance with HUD requirements.

**f.    Occupancy and payment**

    **1.    Payment for occupied unit**

    During the term of the HAP contract, the PHA shall make housing assistance payments to the owner for the months during which a contract unit is leased to and occupied by an eligible family. If an assisted family moves out of a contract unit, the owner may keep the housing assistance payment for the calendar month when the family moves out ("move-out month"). However, the owner may not keep the payment if the PHA determines that the vacancy is the owner's fault.

    **2.    Vacancy payment**

    THE PHA HAS DISCRETION WHETHER TO INCLUDE THE VACANCY PAYMENT PROVISION (PARAGRAPH e.2), OR TO STRIKE THIS PROVISION FROM THE HAP CONTRACT FORM.

    a.    If an assisted family moves out of a contract unit, the PHA may provide vacancy payments to the owner for a PHA-determined vacancy period extending from the beginning of the first calendar month after the move-out month for a period not exceeding two full months following the move-out month.

    b.    The vacancy payment to the owner for each month of the maximum two-month period will be determined by the PHA, and cannot exceed the monthly rent to owner under the assisted lease, minus any portion of the rental payment received by the owner (including amounts available from the tenant's security deposit). Any vacancy payment may cover only the period the unit remains vacant.

OMB Approval No. 2577–0169
(exp. 07/31/2022)

c. The PHA may make vacancy payments to the owner only if:

    1. The owner gives the PHA prompt, written notice certifying that the family has vacated the unit and the date when the family moved out (to the best of the owner's knowledge and belief);

    2. The owner certifies that the vacancy is not the fault of the owner and that the unit was vacant during the period for which payment is claimed;

    3. The owner certifies that it has taken every reasonable action to minimize the likelihood and length of vacancy; and

    4. The owner provides any additional information required and requested by the PHA to verify that the owner is entitled to the vacancy payment.

d. The PHA must take every reasonable action to minimize the likelihood and length of vacancy.

e. The owner may refer families to the PHA and recommend selection of such families from the PHA waiting list for occupancy of vacant units.

f. The owner must submit a request for vacancy payments in the form and manner required by the PHA and must provide any information or substantiation required by the PHA to determine the amount of any vacancy payments.

**3.** **PHA is not responsible for family damage or debt to owner**

Except as provided in this paragraph e (Occupancy and Payment), the PHA will not make any other payment to the owner under the HAP contract. The PHA will not make any payment to the owner for any damages to the unit, or for any other amounts owed by a family under the family's lease.

**g.** **Income-mixing requirement**

    1. Except as provided in paragraphs f.2 through f.5 below, the PHA will not

---

Previous editions are obsolete

OMB Approval No. 2577–0169
(exp. 07/31/2022)

make housing assistance payments under the HAP contract for more than the greater of 25 units or 25 percent of the total number of dwelling units (assisted or unassisted) in any project. The term "project" means a single building, multiple contiguous buildings, or multiple buildings on contiguous parcels of land assisted under this HAP contract.

2.      The limitation in paragraph f.1 does not apply to single-family buildings.

3.      In referring eligible families to the owner for admission to the number of contract units in any project exceeding the 25 unit or 25 percent limitation under paragraph f.1, the PHA shall give preference to elderly families or to families eligible for supportive services, for the number of contract units designated for occupancy by such families. The owner shall rent the designated number of contract units to such families referred by the PHA from the PHA waiting list.

4.      Up to the greater of 25 units or 40 percent of units (instead of the greater of 25 units or 25 percent of units) in a project may be project-based if the project is located in a census tract with a poverty rate of 20 percent or less.

5.      Units that were previously subject to certain federal rent restrictions or receiving another type of long-term housing subsidy provided by HUD do not count toward the income-mixing requirement if, in the five years prior to issuance of the Request for Proposal or notice of owner selection (for projects selected based on a prior competition or without competition), the unit received one of the forms of HUD assistance or was under a federal rent restriction as described in f.6 and f.7, below.

6.      The following specifies the number of contract units (if any) that received one of the following forms of HUD assistance (enter the number of contract units in front of the applicable form of assistance):

    ____     Public Housing or Operating Funds;

    ____     Project-Based Rental Assistance (including Mod Rehab and Mod Rehab Single-Room Occupancy);

    ____     Housing for the Elderly (Section 202 or the Housing Act of 1959);

    ____     Housing for Persons with Disabilities (Section 811 of the Cranston-Gonzalez Affordable Housing Act);

OMB Approval No. 2577–0169
(exp. 07/31/2022)

____ Rent Supplement Program;

____ Rental Assistance Program;

____ Flexible Subsidy Program.

The following <u>total</u> number of contract units received a form of HUD assistance listed above: <u>0</u>. If all of the units in the project received such assistance, you may skip sections g.7 and g.8, below.

7. The following specifies the number of contract units (if any) that were under any of the following federal rent restrictions (enter the number of contract units in front of the applicable type of federal rent restriction):

____ Section 236;

____ Section 221(d)(3) or (d)(4) BMIR (below-market interest rate);

____ Housing for the Elderly (Section 202 or the Housing Act of 1959);

____ Housing for Persons with Disabilities (Section 811 of the Cranston-Gonzalez Affordable Housing Act);

____ Flexible Subsidy Program.

The following <u>total</u> number of contract units were subject to a federal rent restriction listed above: <u>0</u>. If all of the units in the project were subject to a federal rent restriction, you may skip section g.8, below.

8. The following specifies the number of contract units (if any) designated for occupancy by elderly families or by families eligible for supportive services:

a    Place a check mark here ____ if any contract units are designated for occupancy by elderly families; The following number of contract units shall be rented to elderly families:

_____.

b.    Place a check mark here ✓ if any contract units are designated for occupancy by families eligible for supportive services. The

OMB Approval No. 2577–0169
(exp. 07/31/2022)

following number of contract units shall be rented to families
eligible for supportive services:

_____ .

9.   The PHA and owner must comply with all HUD requirements regarding
income mixing.

OMB Approval No. 2577–0169
(exp. 07/31/2022)

## EXECUTION OF HAP CONTRACT FOR SINGLE-STAGE PROJECT

| PUBLIC HOUSING AGENCY (PHA) |
|---|
| Name of PHA (Print) |
| **Montana Department of Comi** |
| By: |
| Signature of authorized representative |
| Diana Collver-Vanek, PBS 8 Program Manager |
| Name and official title (Print) |
| |
| Date |
| **OWNER** |
| Name of Owner (Print) |
| **Fort Harrison Veterans Residences, LP** |
| By: |
| Signature of authorized representative |
| |
| Name and official title (Print) |
| |
| Date |

Previous editions are obsolete

OMB Approval No. 2577–0169
(exp. 07/31/2022)

### EXECUTION OF HAP CONTRACT FOR CONTRACT UNITS COMPLETED AND ACCEPTED IN STAGES

(For multi-stage projects, at acceptance of each stage, the PHA and the owner sign the HAP contract execution for the completed stage.)

**STAGE NO. 1:** The Contract is hereby executed for the contract units in this stage.

**STAGE EFFECTIVE DATE:** The effective date of the Contract for this stage is:

Date     03/28/2019

**PUBLIC HOUSING AGENCY (PHA)**

**Name of PHA (Print)**     Montana Department of Commerce

By:

Signature of authorized representative

Leslie Torgerson, Section Program Manager

Name and official title (Print)

Date

**OWNER**

**Name of Owner (Print)**     Fort Harrison Veterans Residences, LP

By:

Signature of authorized representative

Name and official title (Print)     *Donald Paxton*

*MANAGER, Ft Harrison Veterans Residences Limited Partnership*

Date     *9/24/21*

**Project-Based Voucher Program
HAP Contract for New Construction/Rehab**

Previous editions are obsolete

**HUD 52530A Page – 10 of Part 1
(07/2019)**

OMB Approval No. 2577–0169
(exp. 07/31/2022)

**STAGE NO. 2:** The Contract is hereby executed for the contract units in this stage.

**STAGE EFFECTIVE DATE:** The effective date of the Contract for this stage is:

Date    04/12/2019

**PUBLIC HOUSING AGENCY (PHA)**

**Name of PHA (Print)**        Montana Department of Commerce

By:

Signature of authorized representative

Leslie Torgerson, Section 8 Program Manager

Name and official title (Print)

Date

**OWNER**

**Name of Owner (Print)**   Fort Harrison Veterans Residences, LP

By:

Signature of authorized representative

Name and official title (Print)   *Donald Paxton*

*MANAGER, Ft Harrison Veterans Residences Limited Partnership*

Date   *9/24/21*

---

OMB Approval No. 2577–0169
(exp. 07/31/2022)

**STAGE NO. 3:** The Contract is hereby executed for the contract units in this stage.

**STAGE EFFECTIVE DATE:** The effective date of the Contract for this stage is:

| | |
|---|---|
| Date | 06/05/2019 |

**PUBLIC HOUSING AGENCY (PHA)**

**Name of PHA (Print)**    Montana Department of Comerce

By:

Signature of authorized representative

Leslie Torgerson, Section 8 Program Manager

Name and official title (Print)

Date

**OWNER**

**Name of Owner (Print)**    Fort Harrison Veterans Residences, LP

By:

Signature of authorized representative

Name and official title (Print)    *Donald Paxton*

*MANAGER, Ft Harrison Veterans Residences Limited Partnership*

| | |
|---|---|
| Date | 9/24/21 |

---

OMB Approval No. 2577–0169
(exp. 07/31/2022)

**STAGE NO.** 6 **:** The Contract is hereby executed for the contract units in this stage.

**STAGE EFFECTIVE DATE:** The effective date of the Contract for this stage is:

| | |
|---|---|
| Date | 04/02/2020 |

**PUBLIC HOUSING AGENCY (PHA)**

**Name of PHA (Print)**      Montana Department of Commerce

By:

Signature of authorized representative

## Leslie Torgerson, Section 8 Program Manager

Name and official title (Print)

Date

**OWNER**

**Name of Owner (Print)**      Fort Harrison Veterans Residences, LP

By:

Signature of authorized representative

Name and official title (Print)    *Donald Paxton*

*MANAGER FT Harrison Veterans Residences Limited Partnership*

Date    *9/24/21*

OMB Approval No. 2577–0169
(exp. 07/31/2022)

**STAGE NO.** 6 **:** The Contract is hereby executed for the contract units in this stage.

**STAGE EFFECTIVE DATE:** The effective date of the Contract for this stage is:

| | |
|---|---|
| Date | 04/02/2020 |

**PUBLIC HOUSING AGENCY (PHA)**

**Name of PHA (Print)**     Montana Department of Commerce

By:

Signature of authorized representative

Leslie Torgerson, Section 8 Program Manager

Name and official title (Print)

Date

**OWNER**

**Name of Owner (Print)**     Fort Harrison Veterans Residences, LP

By:

Signature of authorized representative

Name and official title (Print)     *Donald Paxton*

*Manager, Ft Harrison Veterns Residences Limited Partnership*

Date     *9/24/21*

---

**Project-Based Voucher Program**
**HAP Contract for New Construction/Rehab**

Previous editions are obsolete

**HUD 52530A Page – 13 of Part 1**
**(07/2019)**

OMB Approval No. 2577–0169
(exp. 07/31/2022)

**STAGE NO.** <u>6</u> : The Contract is hereby executed for the contract units in this stage.

**STAGE EFFECTIVE DATE:** The effective date of the Contract for this stage is:

| | |
|---|---|
| Date | 04/02/2020 |

**PUBLIC HOUSING AGENCY (PHA)**

| | |
|---|---|
| Name of PHA (Print) | Montana Department of Commerce |

By:

Signature of authorized representative

## Leslie Torgerson, Section 8 Program Manager

Name and official title (Print)

Date

**OWNER**

| | |
|---|---|
| Name of Owner (Print) | Fort Harrison Veterans Residences, LP |

By:

Signature of authorized representative

Name and official title (Print)   *Donald Paxton*

*Manager, Ft Harrison Veterans Residences Limited Partnership*

Date   *9/24/21*

OMB Approval No. 2577–0169
(exp. 07/31/2022)

**U.S. Department of Housing and Urban Development**
**Office of Public and Indian Housing**

**SECTION 8 PROJECT-BASED VOUCHER PROGRAM**

**HOUSING ASSISTANCE PAYMENTS CONTRACT**
**NEW CONSTRUCTION OR REHABILITATION**

**PART 2 OF HAP CONTRACT**

Public reporting burden for this collection of information is estimated to average 2 hours. This includes the time for collecting, reviewing and reporting the data. The information is being collected as required by 24 CFR 983.202, which requires the PHA to enter into a HAP contract with the owner to provide housing assistance payments for eligible families. This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless that collection displays a valid OMB control number. Assurances of confidentiality are not provided under this collection.

Privacy Act Statement. HUD is committed to protecting the privacy of individuals' information stored electronically or in paper form, in accordance with federal privacy laws, guidance, and best practices. HUD expects its third-party business partners, including Public Housing Authorities, who collect, use maintain, or disseminate HUD information to protect the privacy of that information in Accordance with applicable law.

## 2. DEFINITIONS

**Agreement.** Agreement to enter into HAP Contract between the owner and the PHA. The HAP contract was entered into following new construction or rehabilitation of the contract units by the owner pursuant to an Agreement.

**Contract units.** The housing units covered by this HAP contract. The contract units are described in Exhibit A.

**Controlling interest.** In the context of PHA-owned units (see definition below), controlling interest means:

(a) Holding more than 50 percent of the stock of any corporation; or

(b) Having the power to appoint more than 50 percent of the members of the board of directors of a non-stock corporation (such as a non-profit corporation); or

(c) Where more than 50 percent of the members of the board of directors of any corporation also serve as directors, officers, or employees of the PHA; or

(d) Holding more than 50 percent of all managing member interests in an LLC; or

OMB Approval No. 2577–0169
(exp. 07/31/2022)

(e) Holding more than 50 percent of all general partner interests in a partnership; or

(f) Having equivalent levels of control in other ownership structures.

**Family.** The persons approved by the PHA to reside in a contract unit with assistance under the program.

**HAP contract.** This housing assistance payments contract between the PHA and the owner. The contract consists of Part 1, Part 2, and the contract exhibits (listed in section 1.c of the HAP contract).

**Household.** The family and any PHA-approved live-in aide.

**Housing assistance payment.** The monthly assistance payment by the PHA for a contract unit, which includes: (1) a payment to the owner for rent to the owner under the family's lease minus the tenant rent; and (2) an additional payment to or on behalf of the family if the utility allowance exceeds total tenant payment.

**Housing quality standards (HQS).** The HUD minimum quality standards for dwelling units occupied by families receiving project-based voucher program assistance.

**HUD.** U.S. Department of Housing and Urban Development.

**HUD requirements.** HUD requirements which apply to the project-based voucher program. HUD requirements are issued by HUD headquarters, as regulations, Federal Register notices or other binding program directives.

**Newly constructed housing.** Housing units that do not exist on the proposal selection date and are developed after the date of selection pursuant to an Agreement between the PHA and owner for use under the project-based voucher program.

**Owner.** Any person or entity who has the legal right to lease or sublease a unit to a participant.

**PHA.** Public Housing Agency. The agency that has entered into the HAP contract with the owner. The agency is a public housing agency as defined in the United States Housing Act of 1937 (42 U.S.C. 1437a(b)(6)).

**PHA-owned units.** A unit is "owned by a PHA" if the unit is in a project that is:

(a) Owned by the PHA (which includes a PHA having a "controlling interest" in the entity that owns the unit; see definition above);

OMB Approval No. 2577–0169
(exp. 07/31/2022)

(b) Owned by an entity wholly controlled by the PHA; or

(c) Owned by a limited liability company (LLC) or limited partnership in which the PHA (or an entity wholly controlled by the PHA) holds a controlling interest in the managing member or general partner.

**Premises.** The building or complex in which a contract unit is located, including common areas or grounds.

**Principal or interested party.** This term includes a management agent and other persons or entities participating in project management, and the officers and principal members, shareholders, investors, and other parties having a substantial interest in the HAP contract, or in any proceeds or benefits arising from the HAP contract.

**Program.** The project-based voucher program (see authorization for project-based assistance at 42 U.S.C. 1437f(o)(13)).

**Proposal selection date.** The date the PHA gives written notice of proposal selection to the owner whose proposal is selected in accordance with the criteria established in the PHA's administrative plan.

**Rehabilitated housing.** Housing units that exist on the proposal selection date but do not substantially comply with the HQS on that date and are developed pursuant to an Agreement between the PHA and owner for use under the project-based voucher program.

**Rent to owner.** The total monthly rent payable to the owner under the lease for a contract unit. Rent to owner includes payment for any housing services, maintenance and utilities to be provided by the owner in accordance with the lease.

**Tenant.** The person or persons (other than a live-in aide) who executes the lease as a lessee of the dwelling unit.

**Tenant rent.** The portion of the rent to owner payable by the family, as determined by the PHA in accordance with HUD requirements. The PHA is not responsible for paying any part of the tenant rent.

3. **PURPOSE**

   a.   This is a HAP contract between the PHA and the owner.

   b.   The purpose of the HAP contract is to provide housing assistance payments for eligible families who lease contract units that comply with

OMB Approval No. 2577–0169
(exp. 07/31/2022)

the HUD HQS from the owner.

c.    The PHA must make housing assistance payments to the owner in accordance with the HAP contract for contract units leased and occupied by eligible families during the HAP contract term. HUD provides funds to the PHA to make housing assistance payments to owners for eligible families.

## 4.    RENT TO OWNER; HOUSING ASSISTANCE PAYMENTS

### a.    Amount of initial rent to owner

The initial rent to owner for each contract unit is stated in Exhibit A, which is attached to and made a part of the HAP contract. At the beginning of the HAP contract term, and until rent to owner is adjusted in accordance with section 5 of the HAP contract, the rent to owner for each bedroom size (number of bedrooms) shall be the initial rent to owner amount listed in Exhibit A.

Place a check mark here ___ if the PHA has elected not to reduce rents below the initial rent to owner.

### b.    HUD rent requirements

Notwithstanding any other provision of the HAP contract, the rent to owner may in no event exceed the amount authorized in accordance with HUD requirements. The PHA has the right to reduce the rent to owner, at any time, to correct any errors in establishing or adjusting the rent to owner in accordance with HUD requirements. The PHA may recover any overpayment from the owner.

### c.    PHA payment to owner

1.    Each month the PHA must make a housing assistance payment to the owner for a unit under lease to and occupied by an eligible family in accordance with the HAP contract.

2.    The monthly housing assistance payment to the owner for a contract unit is equal to the amount by which the rent to owner exceeds the tenant rent.

3.    Payment of the tenant rent is the responsibility of the family. The PHA is not responsible for paying any part of the tenant rent, or for paying any other claim by the owner against a family. The PHA is responsible only for making housing assistance payments to the

OMB Approval No. 2577–0169
(exp. 07/31/2022)

owner on behalf of a family in accordance with the HAP contract.

4.  The owner will be paid the housing assistance payment under the HAP contract on or about the first day of the month for which payment is due, unless the owner and the PHA agree on a later date.

5.  To receive housing assistance payments in accordance with the HAP contract, the owner must comply with all the provisions of the HAP contract. Unless the owner complies with all the provisions of the HAP contract, the owner does not have a right to receive housing assistance payments.

6.  If the PHA determines that the owner is not entitled to the payment or any part of it, the PHA, in addition to other remedies, may deduct the amount of the overpayment from any amounts due the owner, including amounts due under any other housing assistance payments contract.

7.  The owner will notify the PHA promptly of any change of circumstances that would affect the amount of the monthly housing assistance payment, and will return any payment that does not conform to the changed circumstances.

**d.  Termination of assistance for family**

The PHA may terminate housing assistance for a family under the HAP contract in accordance with HUD requirements. The PHA must notify the owner in writing of its decision to terminate housing assistance for the family in such case.

## 5.  ADJUSTMENT OF RENT TO OWNER

**a.  PHA determination of adjusted rent**

1.  At each annual anniversary during the term of the HAP contract, the PHA shall adjust the amount of rent to owner, upon request to the PHA by the owner, in accordance with law and HUD requirements. In addition, the PHA shall adjust the rent to owner when there is a ten percent decrease in the published, applicable Fair Market Rent in accordance with 24 CFR 983.302. However, if the PHA has elected within the HAP contract not to reduce rents below the initial rent to owner, the rent to owner shall not be reduced below the initial rent to owner except in those cases

OMB Approval No. 2577–0169
(exp. 07/31/2022)

described in 24 CFR 983.302(c)(2).

2.     The adjustment of rent to owner shall always be determined in accordance with all HUD requirements. The amount of the rent to owner may be adjusted up or down, in the amount defined by the PHA in accordance with HUD requirements.

**b.**     **Reasonable rent**

The rent to owner for each contract unit, as adjusted by the PHA in accordance with 24 CFR 983.303, may at no time exceed the reasonable rent charged for comparable units in the private unassisted market, except in cases where the PHA has elected within the HAP contract not to reduce rents below the initial rent to owner. The reasonable rent shall be determined by the PHA in accordance with HUD requirements.

**c.**     **No special adjustments**

The PHA will not make any special adjustments of the rent to owner.

**d.**     **Owner compliance with HAP contract**

The PHA shall not approve, and the owner shall not receive, any increase of rent to owner unless all contract units are in accordance with the HQS, and the owner has complied with the terms of the assisted leases and the HAP contract.

**e.**     **Notice of rent adjustment**

Rent to owner shall be adjusted by written notice by the PHA to the owner in accordance with this section. Such notice constitutes an amendment of the rents specified in Exhibit A.

## 6.   <u>**OWNER RESPONSIBILITY**</u>

The owner is responsible for:

a.     Performing all management and rental functions for the contract units.

b.     Maintaining the units in accordance with HQS.

c.     Complying with equal opportunity requirements.

d.     Enforcing tenant obligations under the lease.

OMB Approval No. 2577–0169
(exp. 07/31/2022)

e.  Paying for utilities and housing services (unless paid by the family under the lease).

f.  Collecting from the tenant:

1.  Any security deposit;

2.  The tenant rent; and

3.  Any charge for unit damage by the family.

## 7.  **OWNER CERTIFICATION**

The owner certifies that at all times during the term of the HAP contract:

a.  All contract units are in good and tenantable condition. The owner is maintaining the premises and all contract units in accordance with the HQS.

b.  The owner is providing all the services, maintenance and utilities as agreed to under the HAP contract and the leases with assisted families.

c.  Each contract unit for which the owner is receiving housing assistance payments is leased to an eligible family referred by the PHA, and the lease is in accordance with the HAP contract and HUD requirements.

d.  To the best of the owner's knowledge, the members of the family reside in each contract unit for which the owner is receiving housing assistance payments, and the unit is the family's only residence.

e.  The owner (including a principal or other interested party) is not the parent, child, grandparent, grandchild, sister, or brother of any member of a family residing in a contract unit unless the PHA has determined that approving leasing of the unit would provide a reasonable accommodation for a family member who is a person with disabilities.

f.  The amount of the housing assistance payment is the correct amount due under the HAP contract.

g.  The rent to owner for each contract unit does not exceed rents charged by the owner for other comparable unassisted units.

h.  Except for the housing assistance payment and the tenant rent as provided under the HAP contract, the owner has not received and will not receive any payments or other consideration (from the family, the PHA, HUD, or

OMB Approval No. 2577–0169
(exp. 07/31/2022)

any other public or private source) for rental of the contract unit.

i.    The family does not own, or have any interest in the contract unit. If the owner is a cooperative, the family may be a member of the cooperative.

## 8.   **CONDITION OF UNITS**

### a.   **Owner maintenance and operation**

The owner must maintain and operate the contract units and premises to provide decent, safe and sanitary housing in accordance with the HQS, including performance of ordinary and extraordinary maintenance. The owner must provide all the services, maintenance and utilities set forth in Exhibits B and C, and in the lease with each assisted family.

### b.   **PHA inspections**

1.    The PHA must inspect each contract unit before execution of the HAP contract. The PHA may not enter into a HAP contract covering a unit until the unit fully complies with the HQS.

2.    Before providing assistance to a new family in a contract unit, the PHA must inspect the unit. The PHA may not provide assistance on behalf of the family until the unit fully complies with the HQS.

3.    At least biennially during the term of the HAP contract, the PHA must inspect a random sample, consisting of at least 20 percent of the contract units in each building, to determine if the contract units and the premises are maintained in accordance with the HQS. Turnover inspections pursuant to paragraph 2 of this section are not counted toward meeting this biennial inspection requirement.

4.    If more than 20 percent of the sample of inspected contract units in a building fail the initial inspection, the PHA must reinspect 100 percent of the contract units in the building.

5.    The PHA must inspect contract units whenever needed to determine that the contract units comply with the HQS and that the owner is providing maintenance, utilities, and other services in accordance with the HAP contract. The PHA must take into account complaints and any other information that comes to its attention in scheduling inspections.

---

OMB Approval No. 2577–0169
(exp. 07/31/2022)

c.     **Violation of the housing quality standards**

    1.    If the PHA determines a contract unit is not in accordance with the HQS, the PHA may exercise any of its remedies under the HAP contract for all or any contract units. Such remedies include termination, suspension or reduction of housing assistance payments, and termination of the HAP contract.

    2.    The PHA may exercise any such contractual remedy respecting a contract unit even if the family continues to occupy the unit.

    3.    The PHA shall not make any housing assistance for a dwelling unit that fails to meet the HQS, unless the owner corrects the defect within the period specified by the PHA and the PHA verifies the correction. If a defect is life threatening, the owner must correct the defect within no more than 24 hours. For other defects, the owner must correct the defect within no more than 30 calendar days (or any PHA-approved extension).

d.     **Maintenance and replacement—owner's standard practice**

Maintenance and replacement (including redecoration) must be in accordance with the standard practice for the building concerned as established by the owner.

9.     **LEASING CONTRACT UNITS**

a.     **Selection of tenants**

    1.    During the term of the HAP contract, the owner must lease all contract units to eligible families selected and referred by the PHA from the PHA waiting list. (See 24 CFR 983.251.)

    2.    The owner is responsible for adopting written tenant selection procedures that are consistent with the purpose of improving housing opportunities for very low-income families and reasonably related to program eligibility and an applicant's ability to perform the lease obligations.

    3.    Consistent with HUD requirements, and Federal civil rights and fair housing requirements, the owner may apply its own nondiscriminatory admission procedures in determining whether to admit a family referred by the PHA for occupancy of a contract unit.  The owner may refer families to the PHA, and recommend

---

OMB Approval No. 2577–0169
(exp. 07/31/2022)

selection of such families from the PHA waiting list for occupancy of vacant units.

4. The owner must promptly notify in writing any rejected applicant of the grounds for rejection.

5. The PHA must determine family eligibility in accordance with HUD requirements.

6. The contract unit leased to each family must be appropriate for the size of the family under the PHA's subsidy standards.

7. If a contract unit was occupied by an eligible family at the time the unit was selected by the PHA, or is so occupied on the effective date of the HAP contract, the owner must offer the family the opportunity to lease the same or another appropriately-sized contract unit with assistance under the HAP contract.

8. The owner is responsible for screening and selecting tenants from the families referred by the PHA from its waiting list.

**b. Vacancies**

1. The owner must promptly notify the PHA of any vacancy in a contract unit. After receiving the owner notice, the PHA shall make every reasonable effort to refer a sufficient number of families for owner to fill the vacancy.

2. The owner must rent vacant contract units to eligible families on the PHA waiting list referred by the PHA.

3. The PHA and the owner must make reasonable, good faith efforts to minimize the likelihood and length of any vacancy.

4. If any contract units have been vacant for a period of 120 or more days since owner notice of vacancy (and notwithstanding the reasonable good faith efforts of the PHA to fill such vacancies), the PHA may give notice to the owner amending the HAP contract to reduce the number of contract units by subtracting the number of contract units (by number of bedrooms) that have been vacant for such period.

---

OMB Approval No. 2577–0169
(exp. 07/31/2022)

10. **TENANCY**

   a. **Lease**

      The lease between the owner and each assisted family must be in accordance with HUD requirements. In all cases, the lease must include the HUD-required tenancy addendum. The tenancy addendum must include, word-for-word, all provisions required by HUD.

   b. **Termination of tenancy**

      1.  The owner may terminate a tenancy only in accordance with the lease and HUD requirements.

      2.  The owner must give the PHA a copy of any owner eviction notice to the tenant at the same time that the owner gives notice to the tenant. Owner eviction notice means a notice to vacate, or a complaint or other initial pleading used to commence an eviction action under State or local law.

   c. **Family payment**

      1.  The portion of the monthly rent to owner payable by the family ("tenant rent") will be determined by the PHA in accordance with HUD requirements. The amount of the tenant rent is subject to change during the term of the HAP contract. Any changes in the amount of the tenant rent will be effective on the date stated in a notice by the PHA to the family and the owner.

      2.  The amount of the tenant rent as determined by the PHA is the maximum amount the owner may charge the family for rent of a contract unit, including all housing services, maintenance and utilities to be provided by the owner in accordance with the HAP contract and the lease.

      3.  The owner may not demand or accept any rent payment from the tenant in excess of the tenant rent as determined by the PHA. The owner must immediately return any excess rent payment to the tenant.

      4.  The family is not responsible for payment of the portion of the contract rent covered by the housing assistance payment under the HAP contract. The owner may not terminate the tenancy of an assisted family for nonpayment of the PHA housing assistance

OMB Approval No. 2577–0169
(exp. 07/31/2022)

payment.

5.  The PHA is responsible only for making the housing assistance payments to the owner on behalf of the family in accordance with the HAP contract. The PHA is not responsible for paying the tenant rent, or any other claim by the owner.

**d.  Other owner charges**

1.  Except as provided in paragraph 2, the owner may not require the tenant or family members to pay charges for meals or supportive services. Nonpayment of such charges is not grounds for termination of tenancy.

2.  In assisted living developments receiving project-based voucher assistance, owners may charge tenants, family members, or both for meals or supportive services. These charges may not be included in the rent to owner, nor may the value of meals and supportive services be included in the calculation of reasonable rent. Non-payment of such charges is grounds for termination of the lease by the owner in an assisted living development.

3.  The owner may not charge the tenant or family members extra amounts for items customarily included in rent in the locality or provided at no additional cost to the unsubsidized tenant in the premises.

**e.  Security deposit**

1.  The owner may collect a security deposit from the family.

2.  The owner must comply with HUD and PHA requirements, which may change from time to time, regarding security deposits from a tenant.

3.  The PHA may prohibit security deposits in excess of private market practice, or in excess of amounts charged by the owner to unassisted families.

4.  When the family moves out of the contract unit, the owner, subject to State and local law, may use the security deposit, including any interest on the deposit, in accordance with the lease, as reimbursement for any unpaid tenant rent, damages to the unit or other amounts which the family owes under the lease. The owner

OMB Approval No. 2577–0169
(exp. 07/31/2022)

must give the family a written list of all items charged against the security deposit and the amount of each item. After deducting the amount used as reimbursement to the owner, the owner must promptly refund the full amount of the balance to the family.

5. If the security deposit is not sufficient to cover amounts the family owes under the lease, the owner may seek to collect the balance from the family. However, the PHA has no liability or responsibility for payment of any amount owed by the family to the owner.

## 11. FAMILY RIGHT TO MOVE

a. The family may terminate its lease at any time after the first year of occupancy. The family must give the owner advance written notice of intent to vacate (with a copy to the PHA) in accordance with the lease. If the family has elected to terminate the lease in this manner, the PHA must offer the family the opportunity for tenant-based rental assistance in accordance with HUD requirements.

b. Before providing notice to terminate the lease under paragraph a, the family must first contact the PHA to request tenant-based rental assistance if the family wishes to move with continued assistance. If tenant-based rental assistance is not immediately available upon lease termination, the PHA shall give the family priority to receive the next available opportunity for tenant-based rental assistance.

## 12. OVERCROWDED, UNDER-OCCUPIED, AND ACCESSIBLE UNITS

The PHA subsidy standards determine the appropriate unit size for the family size and composition. The PHA and owner must comply with the requirements in 24 CFR 983.260. If the PHA determines that a family is occupying a wrong-size unit, or a unit with accessibility features that the family does not require, and the unit is needed by a family that requires the accessibility features, the PHA must promptly notify the family and the owner of this determination, and of the PHA's offer of continued assistance in another unit. 24 CFR 983.260(a).

## 13. PROHIBITION OF DISCRIMINATION

a. The owner may not refuse to lease contract units to, or otherwise discriminate against any person or family in leasing of a contract unit, because of race, color, religion, sex, national origin, disability, age or familial status.

OMB Approval No. 2577–0169
(exp. 07/31/2022)

b.  The owner must comply with the following requirements: The Fair Housing Act (42 U.S.C. 3601–19) and implementing regulations at 24 CFR part 100 *et seq.*; Executive Order 11063, as amended by Executive Order 12259 (3 CFR, 1959–1963 Comp., p. 652 and 3 CFR, 1980 Comp., p. 307) (Equal Opportunity in Housing Programs) and implementing regulations at 24 CFR part 107; title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d-2000d-4) (Nondiscrimination in Federally Assisted Programs) and implementing regulations at 24 CFR part 1; the Age Discrimination Act of 1975 (42 U.S.C. 6101–6107) and implementing regulations at 24 CFR part 146; section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) and implementing regulations at part 8 of this title; title II of the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.* ; 24 CFR part 8; section 3 of the Housing and Urban Development Act of 1968 (12 U.S.C. 1701u) and implementing regulations at 24 CFR part 135; Executive Order 11246, as amended by Executive Orders 11375, 11478, 12086, and 12107 (3 CFR, 1964–1965 Comp., p. 339; 3 CFR, 1966–1970 Comp., p. 684; 3 CFR, 1966–1970 Comp., p. 803; 3 CFR, 1978 Comp., p. 230; and 3 CFR, 1978 Comp., p. 264, respectively) (Equal Employment Opportunity Programs) and implementing regulations at 41 CFR chapter 60; Executive Order 11625, as amended by Executive Order 12007 (3 CFR, 1971–1975 Comp., p. 616 and 3 CFR, 1977 Comp., p. 139) (Minority Business Enterprises); Executive Order 12432 (3 CFR, 1983 Comp., p. 198) (Minority Business Enterprise Development); and Executive Order 12138, as amended by Executive Order 12608 (3 CFR, 1977 Comp., p. 393 and 3 CFR, 1987 Comp., p. 245) (Women's Business Enterprise).

c.  The owner must comply with HUD's Equal Access to HUD-assisted or - insured housing rule (24 CFR 5.105(a)(2)).

d.  The owner must comply with the Violence Against Women Act, as amended, and HUD's implementing regulation at 24 CFR part 5, Subpart L, and program regulations.

e.  The PHA and the owner must cooperate with HUD in the conducting of compliance reviews and complaint investigations pursuant to all applicable civil rights statutes, Executive Orders, and all related rules and regulations.

## 14.  **PHA DEFAULT AND HUD REMEDIES**

If HUD determines that the PHA has failed to comply with the HAP contract, or has failed to take appropriate action to HUD's satisfaction or as directed by HUD, for enforcement of the PHA's rights under the HAP contract, HUD may assume

OMB Approval No. 2577–0169
(exp. 07/31/2022)

the PHA's rights and obligations under the HAP contract, and may perform the obligations and enforce the rights of the PHA under the HAP contract.

## 15. OWNER DEFAULT AND PHA REMEDIES

### a. Owner default

Any of the following is a default by the owner under the HAP contract:

1. The owner has failed to comply with any obligation under the HAP contract, including the owner's obligations to maintain all contract units in accordance with the housing quality standards.

2. The owner has violated any obligation under any other housing assistance payments contract under Section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f).

3. The owner has committed any fraud or made any false statement to the PHA or HUD in connection with the HAP contract.

4. The owner has committed fraud, bribery or any other corrupt or criminal act in connection with any Federal housing assistance program.

5. If the property where the contract units are located is subject to a lien or security interest securing a HUD loan or a mortgage insured by HUD and:

    i. The owner has failed to comply with the regulations for the applicable mortgage insurance or loan program, with the mortgage or mortgage note, or with the regulatory agreement; or

    ii. The owner has committed fraud, bribery or any other corrupt or criminal act in connection with the HUD loan or HUD-insured mortgage.

6. The owner has engaged in any drug-related criminal activity or any violent criminal activity.

### b. PHA remedies

1. If the PHA determines that a breach has occurred, the PHA may exercise any of its rights or remedies under the HAP contract.

---

OMB Approval No. 2577–0169
(exp. 07/31/2022)

2.     The PHA must notify the owner in writing of such determination. The notice by the PHA to the owner may require the owner to take corrective action (as verified by the PHA) by a time prescribed in the notice.

3.     The PHA's rights and remedies under the HAP contract include recovery of overpayments, termination or reduction of housing assistance payments, and termination of the HAP contract.

### c.     PHA remedy is not waived

The PHA's exercise or non-exercise of any remedy for owner breach of the HAP contract is not a waiver of the right to exercise that remedy or any other right or remedy at any time.

## 16.     OWNER DUTY TO PROVIDE INFORMATION AND ACCESS REQUIRED BY HUD OR PHA

### a.     Required information

The owner must prepare and furnish any information pertinent to the HAP contract as may reasonably be required from time to time by the PHA or HUD. The owner shall furnish such information in the form and manner required by the PHA or HUD.

### b.     PHA and HUD access to premises

The owner must permit the PHA or HUD or any of their authorized representatives to have access to the premises during normal business hours and, for the purpose of audit and examination, to have access to any books, documents, papers and records of the owner to the extent necessary to determine compliance with the HAP contract, including the verification of information pertinent to the housing assistance payments or the HAP contract.

## 17.     PHA AND OWNER RELATION TO THIRD PARTIES

### a.     Injury because of owner action or failure to act

The PHA has no responsibility for or liability to any person injured as a result of the owner's action or failure to act in connection with the implementation of the HAP contract, or as a result of any other action or failure to act by the owner.

---

OMB Approval No. 2577–0169
(exp. 07/31/2022)

**b. Legal relationship**

The owner is not the agent of the PHA. The HAP contract does not create or affect any relationship between the PHA and any lender to the owner or any suppliers, employees, contractors or subcontractors used by the owner in connection with the implementation of the HAP contract.

**c. Exclusion of third-party claims**

Nothing in the HAP contract shall be construed as creating any right of a family or other third party (other than HUD) to enforce any provision of the HAP contract, or to assert any claim against HUD, the PHA or the owner under the HAP contract.

**d. Exclusion of owner claims against HUD**

Nothing in the HAP contract shall be construed as creating any right of the owner to assert any claim against HUD.

## 18. PHA-OWNED UNITS

Notwithstanding Section 17 of this HAP contract, a PHA may own units assisted under the project-based voucher program, subject to the special requirements in 24 CFR 983.59 regarding PHA-owned units.

## 19. CONFLICT OF INTEREST

**a. Interest of members, officers, or employees of PHA, members of local governing body, or other public officials**

1. No present or former member or officer of the PHA (except tenant-commissioners), no employee of the PHA who formulates policy or influences decisions with respect to the housing choice voucher program or project-based voucher program, and no public official or member of a governing body or State or local legislator who exercises functions or responsibilities with respect to these programs, shall have any direct or indirect interest, during his or her tenure or for one year thereafter, in the HAP contract.

2. HUD may waive this provision for good cause.

**b. Disclosure**

The owner has disclosed to the PHA any interest that would be a violation of the HAP contract. The owner must fully and promptly update such

OMB Approval No. 2577–0169
(exp. 07/31/2022)

disclosures.

**c.** **Interest of member of or delegate to Congress**

No member of or delegate to the Congress of the United States of America or resident-commissioner shall be admitted to any share or part of this HAP Contract or to any benefits arising from the contract.

## 20. EXCLUSION FROM FEDERAL PROGRAMS

**a.** **Federal requirements**

The owner must comply with and is subject to requirements of 2 CFR part 2424.

**b.** **Disclosure**

The owner certifies that:

1. The owner has disclosed to the PHA the identity of the owner and any principal or interested party.

2. Neither the owner nor any principal or interested party is listed on the U.S. General Services Administration list of parties excluded from Federal procurement and nonprocurement programs; and none of such parties are debarred, suspended, subject to a limited denial of participation or otherwise excluded under 2 CFR part 2424.

## 21. TRANSFER OF THE CONTRACT OR PROPERTY

**a.** **When consent is required**

1. The owner agrees that neither the HAP contract nor the property may be transferred without the advance written consent of the PHA in accordance with HUD requirements.

2. "Transfer" includes:

   a. Any sale or assignment or other transfer of ownership, in any form, of the HAP contract or the property;

   b. The transfer of any right to receive housing assistance payments that may be payable pursuant to the HAP contract;

OMB Approval No. 2577–0169
(exp. 07/31/2022)

    c.    The creation of a security interest in the HAP contract or the property;

    d.    Foreclosure or other execution on a security interest; or

    e.    A creditor's lien, or transfer in bankruptcy.

3.    If the owner is a corporation, partnership, trust or joint venture, the owner is not required to obtain advance consent of the PHA pursuant to paragraph a for transfer of a passive and non-controlling interest in the ownership entity (such as a stock transfer or transfer of the interest of a limited partner), if any interests so transferred cumulatively represent less than half the beneficial interest in the HAP contract or the property. The owner must obtain advance consent pursuant to paragraph a for transfer of any interest of a general partner.

**b.    Transferee assumption of HAP contract**

No transferee (including the holder of a security interest, the security holder's transferee or successor in interest, or the transferee upon exercise of a security interest) shall have any right to receive any payment of housing assistance payments pursuant to the HAP contract, or to exercise any rights or remedies under the HAP contract, unless the PHA has consented in advance, in writing to such transfer, and the transferee has agreed in writing, in a form acceptable to the PHA in accordance with HUD requirements, to assume the obligations of the owner under the HAP contract, and to comply with all the terms of the HAP contract.

**c.    Effect of consent to transfer**

1.    The creation or transfer of any security interest in the HAP contract is limited to amounts payable under the HAP contract in accordance with the terms of the HAP contract.

2.    The PHA's consent to transfer of the HAP contract or the property does not to change the terms of the HAP contract in any way, and does not change the rights or obligations of the PHA or the owner under the HAP contract.

3.    The PHA's consent to transfer of the HAP contract or the property to any transferee does not constitute consent to any further transfers of the HAP contract or the property, including further transfers to any successors or assigns of an approved transferee.

OMB Approval No. 2577–0169
(exp. 07/31/2022)

**d.    When transfer is prohibited**

The PHA will not consent to the transfer if any transferee, or any principal or interested party is debarred, suspended subject to a limited denial of participation, or otherwise excluded under 2 CFR part 2424, or is listed on the U.S. General Services Administration list of parties excluded from Federal procurement or nonprocurement programs.

## 22.    SUBSIDY LAYERING

**a.    Owner disclosure**

The owner must disclose to the PHA, in accordance with HUD requirements, information regarding any related assistance from the Federal Government, a State, or a unit of general local government, or any agency or instrumentality thereof, that is made available or is expected to be made available with respect to the contract units. Such related assistance includes, but is not limited to, any loan, grant, guarantee, insurance, payment, rebate, subsidy, credit, tax benefit, or any other form of direct or indirect assistance.

**b.    Limit of payments**

Housing assistance payments under the HAP contract must be no more than is necessary, as determined in accordance with HUD requirements, to provide affordable housing after taking account of such related assistance. The PHA will adjust in accordance with HUD requirements the amount of the housing assistance payments to the owner to compensate in whole or in part for such related assistance.

## 23.    OWNER LOBBYING CERTIFICATIONS

a.    The owner certifies, to the best of owner's knowledge and belief, that:

1.    No Federally appropriated funds have been paid or will be paid, by or on behalf of the owner, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of the HAP contract, or the extension, continuation, renewal, amendment, or modification of the HAP contract.

2.    If any funds other than Federally appropriated funds have been paid or will be paid to any person for influencing or attempting to

OMB Approval No. 2577–0169
(exp. 07/31/2022)

influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the HAP contract, the owner must complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

b.      This certification by the owner is a prerequisite for making or entering into this transaction imposed by 31 U.S.C. 1352.

## 24.     TERMINATION OF HAP CONTRACT FOR WRONGFUL SELECTION OF CONTRACT UNITS

The HAP contract may be terminated upon at least 30 days notice to the owner by the PHA or HUD if the PHA or HUD determines that the contract units were not eligible for selection in conformity with HUD requirements.

## 25.     NOTICES AND OWNER CERTIFICATIONS

a.      Where the owner is required to give any notice to the PHA pursuant to the HAP contract or any other provision of law, such notice must be in writing and must be given in the form and manner required by the PHA.

b.      Any certification or warranty by the owner pursuant to the HAP contract shall be deemed a material representation of fact upon which reliance was placed when this transaction was made or entered into.

## 26.     NOTICE OF TERMINATION OR EXPIRATION WITHOUT EXTENSION

a.      An owner must provide notice to the PHA, and to the affected tenants, not less than 1 year prior to the termination or expiration without extension of a HAP contract.

b.      An owner who fails to provide such notice must permit tenants to remain in their units for the required notice period with no increase in the tenant portion of the rent. During this time period, an owner may not evict a tenant as a result of the owner's inability to collect an increased tenant portion of rent. With PHA agreement, an owner may extend the terminating contract for a period of time sufficient to give tenants 1 years's advance notice.

## 27.     FAMILY'S RIGHT TO REMAIN

Upon termination or expiration of the contract without extension, each family assisted under the contract may elect to use its assistance to remain in the project

OMB Approval No. 2577–0169
(exp. 07/31/2022)

if the family's unit complies with the inspection requirements under section 8(o)(8) (42 U.S.C. 1437f(o)(8) of the U.S. Housing Act of 1937 ("the 1937 Act")), the rent for the unit is reasonable as required by section 8(o)(10)(A) of the 1937 Act, and the family pays its required share of the rent and the amount, if any, by which the unit rent (including the amount allowed for tenant-paid utilities) exceeds the applicable payment standard.

## 28. **ENTIRE AGREEMENT; INTERPRETATION**

a. The HAP contract, including the exhibits, is the entire agreement between the PHA and the owner.

b. The HAP contract must be interpreted and implemented in accordance with all statutory requirements, and with all HUD requirements, including amendments or changes in HUD requirements during the term of the HAP contract. The owner agrees to comply with all such laws and HUD requirements. Any regulatory citation specifically included in this HAP contract is subject to any subsequent revision of such citation.

**U.S. Department of Housing and Urban Development**
Office of Public and Indian Housing

## MOVING TO WORK (MTW) RIDER TO THE HOUSING ASSISTANCE PAYMENT (HAP) CONTRACT FOR THE SECTION 8 TENANT-BASED ASSISTANCE HOUSING CHOICE VOUCHER PROGRAM (HCV) AND/OR THE SECTION 8 PROJECT-BASED VOUCHER (PBV) PROGRAM

Pursuant to the Public Housing Agency's (PHA) participation in the MTW demonstration, the PHA may establish Section 8 HCV or PBV policies or requirements that differ from statutory requirements for both programs contained in the U.S. Housing Act of 1937, the relevant regulatory requirements, and applicable Public and Indian Housing Notices. Where any particular provisions of this HAP Contract differ from or conflict with the MTW activities included in the PHA's approved MTW Supplement to its PHA Plan, the provisions of the MTW Operations Notice and the approved MTW Supplement to the PHA Plan shall supersede any conflicting or differing HAP Contract language. Further, the MTW Activity authorized by the MTW Operations Notice shall govern the PHA's administration of the program notwithstanding a conflicting or differing provision of the HAP Contact. This rider shall be in effect for the term of the HAP Contract or the term of the PHA's participation in the MTW demonstration, whichever ends sooner.

# Freedom's Path

# at Ft. Harrison

# Exhibit A

| Bedroom | Number of Units | Contract Rents |
|---------|-----------------|----------------|
| 1 | 2 | $770 |
| 1 | 13 | $770 |
| 1 | 4 | $770 |
|  |  |  |
| 2 | 3 | $978 |
| 2 | 15 | $978 |
| 2 | 5 | $978 |

4858-0507-1801.v1

| BLDG | UNIT # | ADDRESS | RENT | BEDS |
|------|--------|---------|------|------|
| 2 | 101 | 3720 Liberty Lane | $770.00 | 1 |
|  | 102 | 3720 Liberty Lane | $770.00 | 1 |
|  | 103 | 3720 Liberty Lane | $770.00 | 1 |
|  | 104 | 3720 Liberty Lane | $770.00 | 1 |
|  | 201 | 3720 Liberty Lane | $770.00 | 1 |
|  | 202 | 3720 Liberty Lane | $770.00 | 1 |
|  | 203 | 3720 Liberty Lane | $770.00 | 1 |
| 3 | 101 | 3702 Liberty Lane | $770.00 | 1 |
|  | 102 | 3702 Liberty Lane | $770.00 | 1 |
|  | 201 | 3702 Liberty Lane | $978.00 | 2 |
|  | 202 | 3702 Liberty Lane | $978.00 | 2 |
|  | 301 | 3702 Liberty Lane | $978.00 | 2 |
|  | 302 | 3702 Liberty Lane | $978.00 | 2 |
| 4 | 101 | 3680 Liberty Lane | $770.00 | 1 |
|  | 102 | 3680 Liberty Lane | $770.00 | 1 |
|  | 201 | 3680 Liberty Lane | $978.00 | 2 |
|  | 202 | 3680 Liberty Lane | $978.00 | 2 |
|  | 301 | 3680 Liberty Lane | $978.00 | 2 |
|  | 302 | 3680 Liberty Lane | $978.00 | 2 |
| 5 | 101 | 3670 Gen Eschenburg Lane | $770.00 | 1 |
|  | 102 | 3670 Gen Eschenburg Lane | $770.00 | 1 |
|  | 201 | 3670 Gen Eschenburg Lane | $978.00 | 2 |
|  | 202 | 3670 Gen Eschenburg Lane | $978.00 | 2 |
|  | 301 | 3670 Gen Eschenburg Lane | $978.00 | 2 |
|  | 302 | 3670 Gen Eschenburg Lane | $978.00 | 2 |
| 11 | 101 | 3782  Freedom Lane | $978.00 | 2 |
|  | 102 | 3782 Freedom Lane | $978.00 | 2 |
| 12 | 101 | 3778 Freedom Lane | $978.00 | 2 |
|  | 102 | 3778 Freedom Lane | $978.00 | 2 |
| 13 | 101 | 3772 Freedom Lane | $978.00 | 2 |
|  | 102 | 3772 Freedom Lane | $978.00 | 2 |
| 14 | 101 | 3768 Freedom Lane | $978.00 | 2 |
| 35 | 101 | 3662 Gen Eschenburg Lane | $770.00 | 1 |
|  | 102 | 3662 Gen Eschenburg Lane | $770.00 | 1 |
|  | 201 | 3662 Gen Eschenburg Lane | $770.00 | 1 |

| | 202 | 3662 Gen Eschenburg Lane | $770.00 | 1 |
| | 301 | 3662 Gen Eschenburg Lane | $770.00 | 1 |
| | 302 | 3662 Gen Eschenburg Lane | $770.00 | 1 |
| 36 | 101 | 3666 Gen Eschenburg Lane | $978.00 | 2 |
| | 102 | 3666 Gen Eschenburg Lane | $978.00 | 2 |
| 41 | 101 | 3764 Freedom Lane | $978.00 | 2 |
| 42 | 101 | 3786 Freedom Lane | $978.00 | 2 |

# Freedom's Path

# at Ft. Harrison

# Exhibit B

**SERVICES, MAINTENANCE AND EQUIPMENT TO BE PROVIDED BY THE OWNER WITHOUT CHARGES IN ADDITION TO RENT TO OWNER**

**Services, maintenance, or equipment to supplied by the owner without charges addition to the rent to owner.** The owner shall provide on-site management and maintenance, a fitness center, a community room, a technology/computer center, and community laundry facility. There will be a meeting room and smaller counseling room for meetings, possible third party and special need services. Through a third party supportive service organization the owner will provide referrals to appropriate serve providers.

# Freedom's Path

# at Ft. Harrison

# Exhibit D

## FEATURES PROVIDED TO COMPLY WITH PROGRAM ACCESSIBILITY FEATURES OF SECTION 504 OF THE REHABILITATION ACT OF 1973

**Features provided to comply with program accessibility features of section 504 of the rehabilitation act of 1973.**

Note: this project is a rehabilitation of historic buildings. Proposed unit renovations have been designed to provide all feasible universal design and visitability features that are structurally and financially feasible. Specifically, there are 3 Section 504 Units provided for in the above-captioned Development and are designed to be located as follows:

Building 36 (3666 Gen Eschenburg Lane),

      A first floor, 2-bedroom one bath unit

Building 2 (3720 Liberty Lane)

      A first floor, two- 1-bedroom one bath units

The building has an exterior wheelchair lift.

# Freedom's Path

# at Ft. Harrison

# Exhibit C

**UTILITIES AVAILABLE IN THE CONTRACT UNITS, INCLUDING A LIST OF UTILTIH SERVIES TO BE PAID BY THE WONER (WITHOUT CHARGES IN ADDITION TO RENT TO OWNER) AND UTILITITES TO BE PAID BY THE TENANTS**

**Utilities available to the contract units, including a specification of utility services to be paid by owner (without charges in addition to rent) and utility services to be paid by the tenant:**

The owner shall provide all utilities including water, sewer, electricity, and gas.

# Freedom's Path
# at Ft. Harrison
# Exhibit D

**FEATURES PROVIDED TO COMPLY WITH PROGRAM ACCESSIBILITY FEATURES OF SECTION 504 OF THE REHABILITATION ACT OF 1973**

**Features provided to comply with program accessibility features of section 504 of the rehabilitation act of 1973.**

Note: this project is a rehabilitation of historic buildings. Proposed unit renovations have been designed to provide all feasible universal design and visitability features that are structurally and financially feasible. Specifically, there are 3 Section 504 Units provided for in the above-captioned Development and are designed to be located as follows:

Building 36 (3666 Gen Eschenburg Lane),

 A first floor, 2-bedroom one bath unit

Building 2 (3720 Liberty Lane)

 A first floor, two- 1-bedroom one bath units

The building has an exterior wheelchair lift.

4877-6695-5709.v1