Michael P. Talia
Erin Lyndes
JACKSON, MURDO, & GRANT, PC
203 N. Ewing
Helena, MT 59601
Phone:  (406) 442-1300
Email: mtalia@jmgattorneys.com
        elyndes@jmgattorneys.com

*Attorneys for Montana Department of Commerce*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| FORT HARRISON VETERANS RESIDENCES, LP,<br><br>                Plaintiff,<br><br>        v.<br><br>MONTANA DEPARTMENT OF COMMERCE, in its official capacity and as a federally designated public housing agency,<br><br>                Defendant. | Case 6:24-CV-00037-BMM-KLD<br><br>**BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTY** |

## INTRODUCTION

The Plaintiff's Complaint should be dismissed if the United States

Department of Housing and Urban Development ("HUD") is not joined as a

party defendant.  Plaintiff's requested declaratory relief leaves the door

1

open for HUD to disagree with Plaintiff's application of HUD's regulations and take action against the Montana Department of Commerce ("MDOC"), subjecting MDOC to multiple and conflicting obligations.  Plaintiff requests declaratory relief regarding housing assistance payments ("HAP"), made with funds appropriated by Congress to HUD, and administered by MDOC to subsidize the Plaintiff's Project Based Veterans Affairs Supportive Housing ("PB-VASH") project at Fort Harrison.  This is a fight over HUD's requirements and the execution of HUD's money.  HUD has equities in this litigation and needs to be a party.

## FACTUAL BACKGROUND

MDOC and Plaintiff are parties to a HAP contract related to the operation of the PB-VASH property on the Fort Harrison VA campus called Freedom's Path.  MDOC and the Plaintiff are in a dispute about whether the Plaintiff is required to take corrective action in the form of abatement or interim controls to address the presence of lead-based paint in the interior and exterior of dwelling units and other lead hazards in bare soils in outdoor common areas.  MDOC operates as the public housing authority ("PHA") administering HUD funds which are paid to the Plaintiff as the property owner.   Both parties dispute compliance with HUD's regulations in Title 24 of the Code of Federal Regulations.  As reflected in the Plaintiff's

Complaint, the Plaintiff takes the position that it is not required to address lead hazards as a condition to receiving its HAP from MDOC.  MDOC, for its part, takes the position that it is prohibited from providing HAP to Plaintiff for units with lead hazards which are not abated or controlled and privileged to withhold all HAP for the Freedom's Path project because Plaintiff has not properly addressed the lead hazards at the property. Rather than address the lead hazards, Plaintiff filed the instant lawsuit.

HUD is not a signing party to the HAP contract, but the HAP contract is on HUD's prescribed form issued by HUD's regulatory authority and HUD has express remedies under the HAP contract.

> If HUD determines that the PHA has failed to comply with the HAP contract, or has failed to take appropriate action to HUD's satisfaction or as directed by HUD, for enforcement of the PHA's rights under the HAP contract, HUD may assume the PHA's rights and obligations under the HAP contract, and may perform the obligations and enforce the rights of the PHA under the HAP contract.

Plaintiff's Complaint (Doc. 1), Ex. E p. 46 (HAP Contract, Pt. 2, ¶ 14).

The Freedom's Path project is a multifamily project based voucher project which receives, on average, more than $5,000 per assisted dwelling unit annually in project based assistance.  Decl. Cheryl Cohen, ¶ 3 (Jul. 2, 2024).  MDOC has been in regular communication with HUD regarding the situation at Freedom's Path.  In contradiction to allegations in the Plaintiff's

3

Complaint, and among other things, HUD representatives have advised MDOC that:

-HUD considers lead-based paint hazards to be housing quality standards ("HQS") violations. *Id*. at Ex. 1 p. 1 (Radosevich Email, Jul. 31, 2023).

-PHAs have authority under 24 C.F.R. § 983.103(e)(1) to inspect project based voucher ("PBV") units for HQS violations at the PHA's discretion. *Id*.

-A venous blood draw on a child under the age of six done at a doctor's office and which is reported to the property owner by the local public health department which reflects blood lead levels exceeding the prescribed federal threshold qualifies to trigger the provisions of 24 C.F.R. § 35.730. *Id*. at Ex. 2 p. 1 (Urban Memo, Apr. 17, 2024).

-Lead-based paint hazards can be identified through visual assessments, risk assessments, or tenant complaints, and HQS violations can be identified through routine inspections, special inspections, or tenant complaints. *Id*. at Ex. 3 p. 1 (Urban Memo, May 24, 2024).

-PHAs are obligated to determine the appropriate remedy when an owner violates its HAP contract obligations. *Id*. at Ex. 4 p. 1 (Urban Letter, March 8, 2024).

These points are exemplary of the Plaintiff's misapplication of HUD's regulations in this dispute and are offered here to show the risk that if the Plaintiff is granted the relief it requests, MDOC will be subject to conflicting claims from HUD.

## STANDARD OF DECISION

Federal Rule of Civil Procedure 19 states:

> **(a) Persons Required to Be Joined if Feasible.**
>   (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>       (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>       (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>           (i) as a practical matter impair or impede the person's ability to protect the interest; or
>           (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The district court can consider affidavits beyond the pleadings when determining whether an absent party is indispensable. *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

## ARGUMENT

HUD is an indispensable party in this action because MDOC may be subject to conflicting obligations unless HUD is also bound by the Court's

decision.  Federal courts have joined HUD as an indispensable party to cases between subsidized housing project owners or residents and PHAs when the validity of HUD's regulations have been challenged, and not joined HUD when regulations are simply being applied in a civil action.  *Cf. Wilson v. Seattle Housing Authority*, C09-226 2009 U.S. Dist. LEXIS 144911, *5-6 (W.D. Wash. Aug. 9, 2009) (finding HUD a required party in a lawsuit challenging HUD hearing requirements); *Edgecomb v. Housing Authority of the Town of Vernon*, 824 F. Supp 312, 314 (D. Conn. 1993) (finding HUD not a required party in a lawsuit alleging violation of HUD regulations by a PHA).  HUD has also been found to be indispensable when the resolution of a case may impact HUD's implementation of its own policies or practices.  *Boles v. Greenville Housing Authority*, 468 F.2d 476, 478-79 (6th Cir. 1972).

As a preliminary matter, joining HUD is feasible and would not destroy jurisdiction in this case.  The Plaintiff's claims invoke the Court's federal question jurisdiction as applied to a federally subsidized housing project within the Helena Division of the District of Montana.  The United States waived sovereign immunity for claims against HUD related to the Housing Act of 1937.  42 U.S.C. § 1404a.  Joinder of HUD is feasible.  Therefore, MDOC will jump straight to the Rule 19(a)(1)(B)(ii) analysis.

6

If Plaintiff's requested relief is granted and MDOC is ordered to pay Plaintiff in spite of the lead hazards at Freedom's Path, HUD will be able to recover payments it does not believe MDOC should have made to Plaintiff in consideration of the lead hazards at Freedom's Path.  That leaves MDOC open to multiple and inconsistent obligations without HUD as a party to this action.  "'There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a). . . . The determination is heavily influenced by the facts and circumstances of each case.' *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir. 1986) (quoting *Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir. 1982) (per curiam)) (alterations in original).'"  *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010).

MDOC will provide an overview of the application of HQS as a precondition to the provision of HAP to a property owner  before arguing that Plaintiff's Complaint creates the likelihood of inconsistent obligations.

<u>Housing Quality Standards as a Precondition for<br/>Housing Assistance Payments</u>

The Freedom's Path project is federally subsidized housing under the overarching statutory authority of 42 U.S.C. 1437f.  Freedom's Path receives project based funding, as opposed to tenant based funding.

Project based and tenant based assistance have similar, but not identical, regulatory schemes.  HUD has established HQS for housing receiving project based assistance.  The HQS for PBV projects are contained at 24 C.F.R. § 983.101 (2023)[1].  That section incorporates by reference 24 C.F.R. § 982.401 (applicable to tenant based assistance), with a limited exception related to lead-based paint.

While 24 C.F.R. § 982.401 applies the lead-based paint rules in 24 C.F.R. Part 35, Subparts, A, B, M, and R to tenant based assistance, 24 C.F.R. § 983.101 applies the lead-based paint rules in 24 C.F.R. Part 35, Subparts, A, B, H and R to project based assistance.  Freedom's Path receives project based assistance.  The difference in the lead-based paint rules between tenant based voucher and PBV projects is the application of Subpart M to tenant based assistance and the application of Subpart H to project based assistance.  The titles to these subparts in Part 35 appropriately reflect the types of projects.  Plaintiff alleges it was not obligated to take any action by 24 C.F.R. Part 35.  Pl.'s Compl., ¶ 63.

Lead hazards are included in HQS.  The purpose of Subpart H is, "...to eliminate as far as practicable lead-based paint hazards in residential

---

[1] All citations to regulations are to the versions in effect on May 15, 2023, which is the relevant date for this dispute.  HUD recently revised its regulations to roll out a new program called NSPIRE, which is not applicable to the time period in issue in Plaintiff's Complaint.

properties receiving project-based assistance under a HUD program."  24

C.F.R. § 35.700(a).  The requirements in Subpart H, "...apply only to the

assisted dwelling units in a covered property and any common areas

servicing those dwelling units."  *Id*.

The Freedom's Path project is subject to the HQS requirements of 24

C.F.R. § 982.401 except as otherwise provided in 24 C.F.R. § 983.101.

The Freedom's Path project is subject to the provisions of 24 C.F.R. §

35.715 because it is a multifamily project which receives more than $5,000

per assisted dwelling unit annually in project based assistance.  Decl.

Cohen,  ¶ 3.  This requires ongoing monitoring for lead hazards and the

completion of interim controls to address new lead hazards as they are

discovered on a property.  It also requires certain actions when a child

under the age of six residing on the property is found to have elevated

blood lead levels, but elevated blood lead levels are not the only trigger to

remove lead hazards.  As one federal district court has stated in the

application of a different HUD regulatory scheme:

> However, the law requires abatement of unacceptable levels of
> paint in the home, not just abatement when blood levels in
> children rise above a statutorily defined threshold. In addition,
> "the ingestion of household dust containing lead from
> deteriorating or abraded lead-based paint is the most common
> cause of lead poisoning in children." 42 U.S.C. § 4851; *See*
> Rosen Aff. P 24 (citing Agency for Toxic Substances and

9

Disease Registry (ATSRD) of the Public Health Service's
report: *The Nature and Extent of Lead Poisoning in Children in
the United States:  A Report to Congress* (1988) (the "ATSRD
Report").

*German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 549 (S.D.N.Y.

1995).  MDOC, as the PHA, is obligated to monitor the Freedom's Path

property to ensure it remains compliant with HQS including controlling lead

hazards.

MDOC is obligated to inspect Freedom's Path whenever necessary to

ensure HQS compliance.  Plaintiff alleges MDOC was not permitted to

inspect Freedom's Path.  Pl.'s Compl., ¶¶ 66-83.  The parties' HAP

Contract (Pl.'s Compl., Exhibit E p. 46) provides at page 8 of Part 2 of HUD

Form 52530B:

> The PHA must inspect contract units whenever needed to
> determine that the contract units comply with the HQS and that
> the owner is providing maintenance, utilities, and other services
> in accordance with the HAP contract. The PHA must take into
> account complaints and any other information that comes to its
> attention in scheduling inspections.

This contract language is identical to 24 C.F.R. § 983.103(e)(1).  As noted

throughout Plaintiff's Complaint, MDOC has inspected the Freedom's Path

property and found lead hazards which need to be addressed.

MDOC is obligated under 24 C.F.R. § 983.208(b)(1) to "...vigorously

enforce the owner's obligation to maintain contract units in accordance with

the HQS."  Moreover, "The PHA may not make any HAP payment to the owner for a contract unit covering any period during which the contract unit does not comply with the HQS."  24 C.F.R. § 983.208(b)(1).

If MDOC provides HAP to Plaintiff for Freedom's Path, when that project is out of compliance with HQS, HUD can subject MDOC to monetary penalties for HAP which HUD determines should not have been paid to Plaintiff.  On March 8, 2024, the Denver Field Office of Public Housing reminded MDOC of its rights and obligations under the HAP contract as expressed in PIH Notice 2023-06, entitled "Notice on Remedies PHAs have for Poor Performing Owners in the Housing Choice Voucher and Project-Based Voucher Programs."  Decl. Cohen, Ex.  4.  MDOC is forbidden by HUD regulation from making the HAP which the Plaintiff demands in its Complaint.

If this Court orders MDOC to pay HAP to the Plaintiff in spite of the presence of uncontrolled lead hazards without HUD as a party, HUD retains the right and obligation to penalize MDOC for failure to enforce HQS.  This subjects MDOC to multiple and conflicting obligations.  The regulatory scheme at the heart of Plaintiff's Complaint is HUD's regulatory scheme, and the money Plaintiff demands from MDOC is HUD's money. HUD must be a party for the court to fully and finally adjudicate this dispute.

11

## CONCLUSION

Plaintiff's claims should be dismissed unless Plaintiff is willing to amend its Complaint to join HUD as a party defendant.  If the Plaintiff is awarded the relief it requests, MDOC will be made to pay the Plaintiff and then be subject to liability to HUD for having made that payment to Plaintiff.  HUD will also have its contractual remedies foreclosed, if it chooses to step into the shoes of MDOC as provided in the HAP contract.  HUD must be a party to this action.

DATED this 2nd day of July, 2024.

JACKSON, MURDO, & GRANT, PC

By:_____
    Michael P. Talia
    *Attorneys for Montana Department of Commerce*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief totals <u>2,393</u> words as calculated by Microsoft Word, excluding the caption, certificates, tables, and index, if any.

Michael P. Talia

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served on the following using the court's CM/ECF system on the 2nd day of July, 2024.

Jeffrey M. Roth
Michael Green
Crowley Fleck PLLP
305 South 4th St E, Suite 100
Missoula, MT 59801

Michael P. Talia

13