# U. S. Department of Housing and Urban Development

Office of Public Housing

Region VIII, Denver
1670 Broadway Street
Denver, Colorado 80202-4801

Phone: 303-672-5372
Fax: 303-672-5065
Web:  www.hud.gov

**To:** Cheryl Cohen, Montana Housing Division Administrator; Michael Talia, General Counsel, Jackson, Murdo & Grant, PC

**From:** Zachary D. Urban, Director, Denver Field Office of Public Housing *Zachary Urban*

**Date:** April 17, 2024

**Re**: Response to Queries & Technical Assistance Requests Concerning Freedom's Path at Fort Harrison

Thank you for your comprehensive overview and inquiries regarding the lead-based paint concerns and compliance with Housing Quality Standards (HQS) at Freedom's Path at Fort Harrison. The issues you've raised are of paramount importance to us at the Department of Housing and Urban Development (HUD), particularly in ensuring safe and sanitary housing conditions for all program participants.

After a thorough review of your memo dated March 27th, 2024 and referencing 24 CFR, the PBV Housing Assistance Payments (HAP) contract language, Notice OHHLHC 2017-01, Notice PIH 2017-13 (HA) and Notice PIH 2023-06, I'd like to address the concerns and questions you've outlined.

> Question: "If a child under the age of six has a venous blood draw test conducted at a doctor's office and the results indicate an elevated blood lead level of 54.9ug/dL, but the test results include a boilerplate disclaimer regarding possible contamination, is there a requirement for the child to receive a secondary test within so many months in order for it to be a confirmed EBLL?"

A venous blood draw test of that level, conducted at a doctor's office, and for which the owner is notified of the results by a public health department or other medical health care provider meets HUD's regulatory definition of an "elevated blood lead level" at 24 CFR §§ 35.110 and 35.730(a).

Additional information on the PHA and owner response to an EBLL is provided in PIH Notice 2017-13 (HA)/ OHHLHC 2017-01.

> Question: "Can a child under the age of six move into a PBV property that was identified as having lead hazards from a Risk Assessment conducted in accordance with 24 CFR § 35.1320(b) and 35.730(f)(1) before clearance is achieved in accordance with 24 CFR §35.1340 on that particular unit? See 24 CFR § 35.715(b)(2) in comparison to 24 CFR § 35.730(f)(2) timeline."

EXHIBIT
2

The presence of lead-based paint hazards in a PBV target housing (i.e., in general, pre-1978) property is an HQS violation. 24 CFR 983.101(c).

The PHA may not make housing assistance payments to an owner on behalf of a new family until the contract unit fully complies with HQS.  See 24 CFR 983.103.

> Question: "Can a family with a child under 6 move into a unit flagged for lead hazards, so long as the unit into which the child is moving passes clearance testing within 90 days after moving in?"

No, under the PBV program, a family may not move into a unit with HQS violations or uncontrolled lead-based paint hazards (. 24 CFR § 983.103(c). To correct a lead-based paint hazard or deteriorated paint presumed to contain LBP, the owner must meet the requirements at 24 CFR §§ 35.715(b) and 35.1330, including meeting clearance, before a family can move in.

> Question: "When conducting a HQS inspection of a unit or units within a multifamily complex, does the inspector review the condition of paint in common and exterior areas or solely within the unit itself? See 24 CFR § 983.208(a)(1) ("...maintain and operate the contract units and premises…"), 24 CFR § 983.101(a) and (c) ("…minimum quality standards developed by HUD…for housing…") and (lead-based paint requirements)."

When conducting a Housing Quality Standards (HQS) inspection of a unit or units within a multifamily complex under the Project-Based Voucher (PBV) program, the inspector is required to review the condition of paint not only within the individual unit(s) but also in common areas that are accessible to tenants. This includes both interior and exterior common areas. The requirement for this broader inspection scope is supported by regulations that emphasize the need to maintain and operate the contract units and premises in a manner that ensures safety and habitability.

Specifically, 24 CFR § 983.208(a)(1) states the obligation to maintain and operate contract units and premises, which includes ensuring compliance with HQS. Additionally, 24 CFR § 983.101 outlines the applicability of HUD's minimum quality standards for housing, which encompass lead-based paint requirements among other safety standards. 24 CFR § 983.101(d) includes periodic inspections of the unit and premises. Premises is defined at 24 CFR § 983.3 as "the project in which the contract unit is located, including common areas and grounds."

Owners are also required to conduct ongoing lead-based paint maintenance and reevaluation activities as provided in 24 CFR § 35.715(c). Ongoing monitoring as described at 24 CFR § 35.1355(b) includes periodic reevaluation of units, common areas and the exterior, with some requirements that must be completed by a certified Risk Assessor..

> Question: "When conducting a HQS inspection of a PBV unit or PBV units within a multifamily complex, can the inspector apply the Lead-Based Paint instructions found on form HUD-52580-A, including 1.9 Lead-Based Paint and 6.6 Lead-Based Paint: Exterior Surfaces?"

No. Form HUD-52580-A does not include all the fields and requirements in 24 CFR part 35 that a PHA or owner would use for a lead-based paint visual assessment or reevaluation at a PBV

property.  That form was developed for inspection of HCV units.  For compliance with part 35, we recommend that the PHA or owner follow the HUD Guidelines for the Evaluation and Control of Lead-Based Paint Hazards in Housing, Chapter 5. For a visual assessment, HUD advises the use of Form 5.2. Field Report of Visual Assessment.

> Question: "If a unit failed HQS prior to the implementation of the NSPIRE procedures, is the PHA required to conduct an inspection using the new NSPIRE procedures once those are implemented or is it allowable to maintain the requirement for the owner to correct outstanding HQS deficiencies to pre-NSPIRE standards before the unit is cleared for occupancy and HAPs?"

HQS inspections using the NSPIRE Standards commence when the PHA converts to NSPIRE, which must be no later than the extended compliance date of October 1, 2024. The NSPIRE standards are already in effect, but will apply for HQS as of that date the PHA updates its program. Owners are responsible for compliance with NSPIRE. The first NSPIRE inspection by the PHA would be performed at the normal frequency.

If a unit failed an HQS inspection prior to the implementation of NSPIRE, the requirement for the property owner to correct outstanding deficiencies would initially remain based on the HQS criteria under which the inspection was conducted. This is because the deficiencies were identified under the HQS framework, which was the applicable standard at the time of inspection. Owners are responsible for ensuring their units meet the minimum standards required for tenant health and safety, as outlined in the inspection criteria in effect when the inspection was conducted.

In summary, for deficiencies identified under HQS before NSPIRE implementation, the original requirements for correction apply. Moving forward, inspections will be based on NSPIRE standards, and owners should ensure that units comply with these new criteria to pass future inspections and maintain eligibility for Housing Assistance Payments (HAPs).

The Denver Field Office of Public Housing stands ready to provide technical support and guidance to ensure compliance with all applicable standards and regulations, safeguarding the well-being of all residents.

Please do not hesitate to reach out for further technical assistance or clarification on any of the points discussed.