# U. S. Department of Housing and Urban Development



Office of Public Housing

Region VIII, Denver
1670 Broadway Street
Denver, Colorado 80202-4801

Phone: 303-672-5372
Fax: 303-672-5065
Web:  www.hud.gov

March 8, 2024

Cheryl Cohen, Division Administrator,
Montana Housing
Montana Department of Commerce
301 S. Park Ave.
P.O. Box 200528
Helena, MT 59620-0528

Dear Ms. Cohen,

The integrity of the Housing Choice Voucher (HCV) and Project Based Voucher (PBV) programs hinges on ensuring that housing assisted under these programs meets and maintains the highest standards of health and safety. HUD understands your agency is considering how to respond when a property owner has been negligent or delinquent in addressing previously identified health and safety concerns.

We encourage you to review HUD's recent notice, Notice PIH 2023-06, about remedies that a public housing agency (PHA) has available when owners fail to comply with HCV and PBV program requirements, including requirements that relate to health and safety concerns. A copy of Notice PIH 2023-06 is included with this letter.

In the PBV program the HAP contract between your agency and each owner explains the PHA's remedies when an owner violates its obligations under the HAP contract in a section titled "Owner Default and PHA Remedies." According to the HAP contract it is incumbent upon the PHA to make the decision about the proper remedy when an owner fails to timely rectify identified issues.

We trust that this guidance will assist in making informed decisions that uphold the standards and values of our housing programs. We continue to stand ready to provide you with accurate and timely technical support to assist you in making these difficult decisions and request that you reach out to our team here at HUD with any detailed questions or clarifications regarding this matter.

Sincerely,

*Zachary Urban*

Zachary D. Urban
Director, Denver Field Office of Public Housing
U.S. Department of Housing and Urban Development

Enclosure

EXHIBIT 4

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-5000

OFFICE OF PUBLIC AND INDIAN HOUSING

| | |
|---|---|
| Special Attention of: | **Notice PIH 2023 - 06** |
| Office Directors of Public Housing; Regional Directors; Public Housing Agencies. | Issued: March 31, 2023 |
| | Expires: Effective until amended, superseded, or rescinded |
| | Cross References: |

**SUBJECT:** Notice on Remedies PHAs have for Poor Performing Owners in the Housing Choice Voucher and Project-Based Voucher Programs

1. **Applicability:** This Notice applies to public housing agencies (PHAs) that administer the Housing Choice Voucher (HCV) and Project-Based Voucher (PBV) programs.

2. **Purpose:** This notice is to remind PHAs of the remedies they have available when owners fail to comply with HCV and PBV policies and procedures, particularly those requirements that relate to the safety of the unit. This notice also reminds PHAs of when owners must be prohibited from participating in their HCV and PBV programs, and when PHAs may exercise discretion to prohibit owners from participating in their programs. PIH is issuing this notice to:

   - Remind PHAs and property owners in the HCV and PBV programs of the importance of complying with program requirements;
   - Remind PHAs of the remedies they have available when owners fail to comply with program requirements;
   - Remind PHAs of potential discretionary policies they may adopt to preclude owners from future participation in their HCV and PBV programs;
   - Remind PHAs of mandatory reasons for disapproval of owners in the HCV and PBV programs;
   - Remind PHAs and property owners of HUD's potential remedies when PHAs fail to ensure owners' compliance with statutory, regulatory, and/or Housing Assistance Payment (HAP) Contract requirements.

3. **Background:** The HCV and PBV programs have an important role in maximizing the reach of HUD's rental assistance programs to assist as many households as possible. The HCV program seeks to address the demand for assisted renters to have equitable access to quality housing options best suited to their needs. To do this HUD is furthering efforts to ensure housing tied to HUD rental assistance consistently meets decent, safe, and sanitary standards.

   The HCV and PBV programs work in partnership with local communities and property owners to provide decent, safe, and sanitary housing for those in need. While the vast majority of owners who participate in the program follow program requirements as set forth

in the HAP contract, there are circumstances where PHAs have to enforce compliance with program requirements. The requirement that program funds be used in units that are decent, safe, sanitary, and in good repair is a cornerstone of HUD's mission.

4. **PHA Remedies for Non-Compliance with HAP Contract:** The Housing Assistance Payment (HAP) contract is the primary document that governs the relationship between the owner of a unit in the HCV and PBV programs and the PHA. The HAP contract and HUD regulations at 24 CFR section 982.453[1] lay out the following as breaches of the contract by the owner (including a principal or other interested party such as a property manager):

> "(1) If the owner has violated any obligation under the HAP contract for the dwelling unit, including the owner's obligation to maintain the unit in accordance with the Housing Quality Standards (HQS).
>
> (2) If the owner has violated any obligation under any other HAP contract under Section 8 of the 1937 Act (42 U.S.C. 1437f).
>
> (3) If the owner has committed fraud, bribery or any other corrupt or criminal act in connection with any federal housing program.
>
> (4) For projects with mortgages insured by HUD or loans made by HUD, if the owner has failed to comply with the regulations for the applicable mortgage insurance or loan program, with the mortgage or mortgage note, or with the regulatory agreement; or if the owner has committed fraud, bribery or any other corrupt or criminal act in connection with the mortgage or loan.
>
> (5) If the owner has engaged in drug-related criminal activity.
>
> (6) If the owner has committed any violent criminal activity."

The most common violation is failure to maintain the unit in accordance with HQS. The requirement that program funds be used in units that are decent, safe, sanitary, and in good repair is a cornerstone of HUD's mission. If the owner fails to maintain the dwelling unit in accordance with HQS, the PHA **must** take prompt and vigorous action to enforce the owner obligations.[2] The PHA may inspect the unit and premises at any time the PHA determines necessary to ensure that the unit meets HQS and must notify the owner of any HQS deficiencies uncovered.[3] The PHA must not make any housing assistance payments to the owner if the unit is in violation of HQS unless the owner corrects the deficiencies within the required timeframe and the PHA verifies that the corrections have been properly made. If a defect is life threatening, the owner must correct the defect within no more than 24 hours. For

---

[1] This provision also applies to the PBV program per 24 CFR § 983.2(a).
[2] 24 CFR § 982.404 (a)(2) and 983.2(a) for PBV
[3] Form HUD-52641, Page 4, Part B Section 3 e and HUD-52530B Part 2 § 8(b)(5) and HUD-52530A Part 2 § 8(b)(5) for PBV

2

other defects, the owner must correct the defect within no more than 30 calendar days (or any PHA-approved extension).[4]

When the PHA determines the HAP contract is breached for HQS or other reasons, the PHA must take certain steps to comply with the HAP contract and program requirements. In the event of the breach of the HAP contract, the PHA must notify the owner in writing of the determination of the breach and the reasons for that determination.[5] The notice may require the owner to take a corrective action by an established deadline. The PHA may recover any overpayment, suspend housing assistance payments, abate, or reduce the housing assistance payment, terminate the payment or terminate the HAP contract. The PHA may also obtain additional relief by judicial order or action, including specific performance, other injunctive relief, or order for damages. The PHA must provide the owner with written notice of any termination or reduction in housing assistance payments or the termination of the HAP contract.

5. **When PHAs are Required to Exclude Owners from the HCV and PBV Programs:** As mentioned above, PHAs have contractual remedies under the HAP contract for non-compliance, and also can take proactive steps to prevent certain owners from participating in the HCV and PBV programs. Prior to PHA approval of the assisted tenancy and the execution of a HAP contract, the PHA must ensure the owner is eligible for the program per 24 CFR section 982.306.

   Consistent with 24 CFR 982.306(a) and (b), the PHA must not approve an owner's participation in the program if:

   - The PHA is informed (by HUD or otherwise) that the owner is debarred, suspended, or subject to a limited denial of participation under 24 CFR part 24;[6]
   - HUD directs the PHA not to approve the owner's participation in the program because the federal government has instituted an administrative or judicial action against the owner for a violation of the Fair Housing Act or other federal equal opportunity requirements, including, but not limited to, Title VI of the Civil Rights Act, Section 504 of the Rehabilitation Act, Violence Against Women Act, or the Americans with Disabilities Act, and such action is pending; and
   - HUD directs the PHA not to approve an owner's participation in the program because a court or administrative agency has determined that the owner violated the Fair

---

[4] In the case of PHA-owned units in the PBV program, the inspections required under this section must be performed by an independent agency designated in accordance with § 983.59, rather than by the PHA. See also 982.404 and 983.2(a)) and the PHA-owned requirement for HCV (982.352(b)(1)(iv)(A)(3)).

[5] Form HUD-52641, Page 6, Part B Section 10b

[6] HUD's Departmental Enforcement Center pursues suspension and debarment actions that result in the exclusion of a sanctioned party from further participation in HUD procurement and non-procurement programs and other Federal Government programs. Suspensions and debarments are not punitive measures but are part of a government-wide administrative sanctions initiative to ensure the highest standards of professional conduct and ethical business practices by the Federal Government's business partners. Suspensions are generally enacted after an indictment is issued. Debarments are generally issued after a criminal conviction or when serious program violations are detected. See the "Excluded Parties Listing System" at https://sam.gov/SAM/ for a complete compilation of suspended and debarred individuals and organizations.

Housing Act or other federal equal opportunity requirements, including, but not limited to, Title VI of the Civil Rights Act, Section 504 of the Rehabilitation Act, Violence Against Women Act, or the Americans with Disabilities Act.

6. **When PHAs Have Discretion to Exclude Owners from their HCV and PBV Programs**: PHAs can adopt policies that prospectively exclude owners from participating in their HCV and PBV programs. In adopting these policies, PHAs should consider the severity of the owner's previous infractions, whether it is a pattern or practice, and the potential impact on the PHA's HCV and PBV programs. Such policy must be adopted in the PHA's Administrative Plan in accordance with 24 CFR section 982.54(d)(8). Consistent with 24 CFR 982.306(c), the PHA may exclude owners from participating in the program for any of the following reasons:[7]

    - The owner has violated obligations under one or more HAP contracts under the HCV or PBV programs or any other housing program under Section 8 of the U.S. Housing Act of 1937;
    - The owner has committed fraud, bribery or any other corrupt or criminal act in connection with any federal housing program;
    - The owner is currently engaged in or has participated in recent drug-related criminal activity or violent criminal activity;
    - The owner has or has had a practice of non-compliance with HQS in HCV or PBV program units or with applicable housing standards for units leased under any federal housing program;
    - The owner has a history or practice of refusing to evict tenants assisted under the HCV or PBV programs or other federally assisted housing, for activity by the tenant, household member, a guest, or another person under the control of any member of the household that:
        - Threatens the right to peaceful enjoyment of the premises by other residents or of persons residing in the immediate vicinity of the premises;
        - Threatens the health or safety of residents, persons residing in the immediate vicinity of the premises, PHA employees, or owner employees engaged in managing the housing; or
        - Is currently engaged in drug-related criminal activity or violent criminal activity;
    - The owner has a history or practice of renting units that fail to meet state or local housing codes; or
    - The owner has not paid State or local real estate taxes, fines, or assessments.

PHAs are reminded that owners can adopt and implement alternative strategies to eviction to address tenant actions that are in breach of the lease agreement and use eviction as a last resort option to remedy noncompliance. PHAs should not discourage or otherwise penalize owners for using appropriate and effective means other than eviction, nor should PHAs discourage or otherwise penalize owners for considering the nature, severity, and recency of the offense, or any mitigating circumstances such as participation in substance use treatment

---

[7] 24 CFR § 982.306(c)

4

services or other rehabilitative services, prior to moving to evict a tenant. When deciding whether to exclude an owner from participation for a history or practice of refusing to evict, PHAs should take into account whether an owner implements sound practices when determining whether to evict individuals based on criminal activity.[8] Sound practices include but are not limited to relying on accurate and reliable objective evidence, conducting individualized assessments that consider mitigating factors, and considering the potential applicability of Violence Against Women Act (VAWA)'s housing protections for survivors of domestic violence, dating violence, sexual assault, and stalking. PHAs should also take into account whether an owner institutes policies or practices that promote eviction in a manner that gives rise to fair housing concerns.

In addition, if deciding whether to exclude an owner for participation in drug-related criminal activity or violent criminal activity, PHAs should consider the nature, severity, and recency of the offense, as well as any mitigating circumstances.

7. **<u>HUD Remedies for PHA Failure to Comply with Obligations under the HAP Contract</u>:**
   In most cases, PHAs are diligent in complying with their obligation under the HAP contract; however, there are circumstances that require HUD intervention. PHAs are required to follow, and have owners follow, the requirements of the United State Housing Act of 1937 as well as HUD regulations, the PHA's approved administrative plan, and HUD-approved funding applications.[9]

   HUD has several options in the case of a PHA's failure to comply with program requirements. HUD has the authority to reduce or offset the PHA's HCV administrative fee if the PHA fails to perform PHA administrative responsibilities correctly or adequately under the program (for example, PHA failure to enforce HQS requirements or to reimburse a receiving PHA promptly under portability procedures).[10] If a PHA has not administered any Section 8 program correctly, HUD may also prohibit use of funds in the administrative fee reserve, and may direct the PHA to use funds in the reserve to improve administration of the program or to reimburse ineligible expenses.[11]

   HUD can also reduce HAP amounts to PHAs when PHAs fail to comply with the statutory or regulatory requirements. If HUD determines that the PHA has failed to comply with any statutory or regulatory obligations, HUD may reduce to an amount determined by HUD the amount of any funding increment and/or the contract authority or budget authority for any funding increment.[12] HUD must provide written notice and include a revised funding exhibit specifying the term, contract authority, and budget authority for each funding increment under the consolidated Annual Contributions Contract.

   In relatively rare cases where HUD may view the PHA as having failed to take appropriate

---

[8] *See* Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions, *available at:* https://www.fairhousingnc.org/wp-content/uploads/2016/04/HUD-Guidance-on-Criminal-Records-2016.pdf.
[9] 24 CFR § 982.153153
[10] 24 CFR § 982.152 (d)
[11] 24 CFR § 982.155 (b) (3)
[12] 2424 CFR § 982.153

5

action to enforce the PHA's rights under the HAP contract, HUD could declare that the PHA is in default.[13] These circumstances include when:

(1) The PHA has failed to comply with any statutory or regulatory obligations;
(2) The PHA has failed to comply with obligations under a HAP contract;
(3) The PHA has failed to take appropriate action, to HUD's satisfaction or as directed by HUD, for enforcement of the PHA's rights under a HAP contract; or
(4) The PHA has made any misrepresentation to HUD of any material fact.

HUD must provide this determination in writing. In the case of default, HUD may take possession of all or any PHA property, rights, or interests in connection with a program, including funds held by a depositary, program receipts, and rights or interests under a contract for HAP with an owner.[14] Finding a PHA is in default is a step that HUD only takes as a last resort. HUD works with PHAs using less stringent remedies before taking the step of finding PHAs in default. Nevertheless, it remains a possibility in egregious circumstances, and one that HUD does not waive by taking less stringent measures.

In addition to HUD remedies against PHAs, HUD may, where the PHA has properly enforced HQS regulations, appropriately documented and provided justification, initiate claims against the owner under the Program Fraud and Civil Remedies Act (PFCRA). The regulations pertaining to PFCRA can be found at (43 CFR 35.1 – 35.47).

8. **<u>Consideration of Remedies for PBV non-compliance</u>:** The Project-Based Voucher (PBV) program has grown considerably over the past five years. HOTMA provisions and repositioning efforts have rapidly increased the proportion of the HCV program that is comprised of PBVs. HUD's HCV dashboard indicates that proportion has risen from 5.1 percent in April 2016 to 12.8 percent in January 2022.[15] PBVs can be an important part of a strategy for PHAs to preserve and expand affordable housing.

Given the growing importance of PBVs to the HCV program and to many PHA's affordable housing stock, it is essential to ensure that owners are compliant with all program requirements, particularly as it relates to the safety and quality of housing. PHAs should be sure to also do due diligence prior to selecting a project or entering into the Agreement to Enter into a HAP contract to ensure that the potential owner does not have a poor track record with other PBV projects. For projects considered "PHA-Owned," PHAs must follow all relevant requirements related to independent entities.

In the case of owners that fail to comply with program requirements, there are the variety of potential remedies that PHAs can take that are listed above in Section 4. For instance, if a PHA finds that a contract unit is not compliant with HQS, PHAs can adopt a variety of remedies such as termination, suspension or reduction of housing assistance payments, and termination of the HAP contract.

---

[13] 24 CFR § 907.3
[14] 24 CFR § 907.77
[15] https://www.hud.gov/program_offices/public_indian_housing/programs/hcv/dashboard

While working towards voluntary compliance through education and technical assistance can be beneficial in some circumstances, PHAs may find the need at times to take more stringent measures. If the PHA fails to take action to enforce the HAP contract and program requirements, HUD can act as described in Section 7. HUD can also impose civil money penalties against an owner (under 24 CFR 30.68) or debarment/suspension (24 CFR 5.105(c), 2 CFR part 2424), and can also assume the PHA's rights and obligations under the contract (and perform such obligations and enforce such rights) if HUD determines that the PHA has failed to take appropriate action (per Section 14 of the PBV HAP contracts).

**For further information:** Contact Nick Bilka, Office of Public and Indian Housing, Department of Housing and Urban Development, 451 7th Street, SW, Room 4214, Washington, DC 20410-5000

_____
Dominique Blom
General Deputy Assistant Secretary
 for Public and Indian Housing

7