Jeffrey M. Roth
Michael Green
CROWLEY FLECK PLLP
305 South 4th Street E., Suite 100
Missoula, MT 59801
Telephone: (406) 523-3600
jroth@crowleyfleck.com
mgreen@crowleyfleck.com

Aaron M. Danzig (*Pro Hac Vice*)
Orlando J. Cabrera (*Pro Hac Vice*)
ARNALL GOLDEN GREGORY LLP
171 17th St., NW, Suite 2100
Atlanta, GA 30363-1031
Telephone: (404) 873-8504
aaron.danzig@agg.com
orlando.cabrera@agg.com

*Attorneys for Plaintiff Fort Harrison Veterans Residences, LP*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# HELENA DIVISION

| | |
|---|---|
| FORT HARRISON VETERANS RESIDENCES, LP,<br><br>    *Plaintiff*,<br><br>v.<br><br>MONTANA DEPARTMENT OF COMMERCE, in its official capacity and as a federally designated public housing agency,<br><br>    *Defendant*. | CV 24-37-H-BMM-KLD<br><br>**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTY** |

Fort Harrison Veterans Residences, LP ("FHVR" or "Plaintiff"), by and through its undersigned counsel, submits this Response Brief in Opposition to the Motion to Dismiss for Failure to Join Indispensable Party filed by Defendant Montana Department of Commerce ("MDOC").

## FACTUAL BACKGROUND

MDOC and FHVR entered into a housing assistance payment ("HAP") contract whereby FHVR developed or rehabilitated buildings located at Fort William Henry Harrison for lease by veterans, and MDOC provided HAP payments to FHVR under the HAP contract in the form of project-based vouchers ("PBV"), pursuant to 42 U.S.C. 1437(a) and 24 C.F.R. Part 983. (Compl., ¶¶ 21, 45). The PBV program is a common form of subsidy referred to as Section 8 housing assistance allocated by public housing agencies ("PHA") under PBV housing assistance payment ("PBV HAP") contracts that PHAs enter into with owners. (Compl, ¶ 19). MDOC and FHVR are the sole parties to the PBV HAP contract. The United States Department of Housing and Urban Development ("HUD") is not a party to the PBV HAP contract entered into by and between MDOC and FHVR; HUD has no contractual rights under that contract.

Under a PBV HAP contract, the PHA makes housing assistance payments to the owner of a "multi-dwelling" or "multi-unit" building or buildings for specifically identified units that are set aside to house families eligible to receive

federally assisted housing under the United States Housing Act of 1937 ("Housing Act of 1937"). (Compl, ¶ 22). During the term of a PBV HAP contract, the PHA makes the housing assistance payments in accordance with its terms. 24 C.F.R. § 983.201 et seq. (Compl, ¶ 24). HAP are made for each month during which a unit is leased and actually occupied by an eligible family. 24 C.F.R. § 983.351(a)(1). (Compl, ¶ 24). A PBV HAP contract continues until its expiration or termination by the owners or the PHA. 24 C.F.R. § 983.257. (Compl, ¶ 25).

Congress created Housing Quality Standards ("HQS") and authorized HUD to further define HQS in a manner that complies with the Housing Act of 1937 and otherwise apply to PHAs. 42 U.S.C. §1437f(o)(8) and 24 C.F.R. § 983.101). The PHA must certify that an owner complied with HQS under Part 983 before allowing a tenant to possess a federally-assisted unit. 24 C.F.R. § 983.204. HUD regulations expressly state that under 24 C.F.R. § 983.10(b)(2)(ii)(A), the lead-based paint requirements under 24 C.F.R. § 982.401, do not apply to project-based projects under the PBV program. (Compl, ¶ 26). 24 C.F.R. Part 982 deals with the housing choice voucher ("HCV") program. (*Id.*).

On August 11, 2021, before a tenant moved into Unit 41-101, MDOC inspected the unit as required by federal regulation and certified that the unit passed HQS standards. (Compl, ¶ 49). On or about September 28, 2021, a Tenant in Unit 41-101 informed FHVR's third-party property manager that one of his

children under the age of six had elevated blood levels ("EBLL"). (Compl, ¶ 55). Upon inspecting the unit, the third-party property manager noticed that someone had pulled a cord from a wall of the unit that exposed underlying paint. (Compl, ¶ 57). Following this event, and despite never receiving an official lab report from a certified health provider confirming the child actually did have EBLL, FHVR voluntarily undertook remedial steps as if the child had EBLL. (Compl., ¶ 64). Moreover, FHVR notified HUD of the potential EBLL and the parents' unwillingness to provide medical records as required by federal regulation. (Compl., ¶ 61). Notwithstanding FHVR's voluntary actions, MDOC undertook an unlawful course of increased inspections. (Compl, ¶ 66). Even if the parent of the child under the age of six provided the child's medical records demonstrating EBLL, the owner (FHVR) has the sole regulatory obligation to undertake remedial action. The PHA has no authority to undertake any action as a matter of federal law and regulation. 24 C.F.R. § 35.701, et seq. and PIH Notice 2017-13.

In violation of federal law and regulation, MDOC inspected 100% of the units at FHVR's Freedom's Path property and instructed its inspectors to use an Inspection Form which is expressly limited to use with respect to the HCV program, not the PBV program. (Compl, ¶ 70).

Subsequently, MDOC advised FHVR that it failed 100% of the units it inspected on February 10 and April 5, 2023, other than new construction units, on

HQS grounds. (Compl., ¶ 75). However, MDOC applied the HQS requirements under 24 C.F.R Part 982, related to a different Section 8 program, HCV under 42 U.S.C. §1437f(o)(2), and other expressly inapplicable inspection criteria to the Project instead of the applicable HQS standards set forth in 24 C.F.R Part 983 required by Congress and HUD's PBV regulations. (Compl., ¶ 75). Even if the Tenant reported a unit that MDOC could inspect because of the categories set forth in § 983.103(f) [Other Inspections], no part of 983.103(f) authorized MDOC to withhold PBV HAP for all rehabilitated units. 24 C.F.R. § 983.103(f). (Compl., ¶ 76).

MDOC breached its PBV HAP Contract with FHVR by failing to provide HAP for Unit 41-101 and an additional twelve units since April of 2023. (Compl. ¶ 99). Through June 2024, MDOC has failed to pay FHVR $107,185.46 in total for these units, pursuant to the PBV HAP Contract. (Compl., ¶ 77). Additionally, FHVR seeks a declaration from the Court pursuant to 28 U.S.C. § 2201, regarding the proper application of HQS and the LSHR rules to the Project. (Compl., ¶ 111).

FHVR filed its Complaint and Demand for Bench Trial for breach of contract and declaratory judgement against MDOC on June 11, 2024.

On July 2, 2024, MDOC filed its Motion to Dismiss (Doc. 15) under Rule 19 of the Federal Rules of Civil Procedure together with a supporting brief (Doc. 16). FHVR requests denial of this motion in its entirety for the reasons detailed below.

## APPLICABLE LAW

MDOC's Motion to Dismiss is based on Federal Rule of Civil Procedure 19(a), which states:

(a) Persons Required to Be Joined if Feasible.
 1. Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
    A. in that person's absence, the court cannot accord complete relief among existing parties;
    B. that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
       i. as a practical matter impair or impede the person's ability to protect the interest; or
       ii. leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

Under Rule 12(b)(7), the moving party has the burden of persuasion to demonstrate that the nonparty must be joined. *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). The Court accepts as true the allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *See Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony v. City of Los Angeles*, 637 F.3d 993, 996, n.1 (9th Cir. 2011). The Court may also consider evidence outside the pleadings. *See McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

# ARGUMENT

## I. FHVR's Declaratory Judgment Claim Only Seeks to Have the Court Identify the Applicable Regulation, Which Does Not Require Joinder of HUD.

MDOC's Motion to Dismiss only contests FHVR's request for declaratory relief and not the breach of contract claim. (*See* Brief ISO Mot. to Dis., p. 2 (Doc. 16)). MDOC's assertion that HUD is an indispensable party to this case contradicts federal law and regulation. MDOC is a PHA, and Congress delegated all issues relating to the allocation of PBV HAP to PHAs subject to PHAs complying with their annual PHA Administrative Plan. 42 U.S.C. 1437c-1; 24 C.F.R. Part 903. MDOC entered into the PBV HAP Contract with FHVR in conformity with its then applicable annual HUD-approved PHA Administrative Plan. (Compl., p. 2).

MDOC claims that HUD is an indispensable party because "MDOC may be subject to conflicting obligations unless HUD is also bound by the Court's decision." (Brief ISO Mot. to Dis., p. 6 (Doc. 16)). But HUD has no authority or obligations relating to MDOC's breach of the PBV HAP Contract.

MDOC claims that if FHVR's requested relief is granted and it is ordered to pay FHVR, then HUD will be able to recover payments "it does not believe" MDOC should have made to FHVR in consideration of the lead hazards on the Freedom's Path property. (*Id.*, p. 7). MDOC's argument misses the mark because FHVR is only requesting that the Court simply confirm which regulation applies,

24 C.F.R. Part 982 or 24 C.F.R. Part 983. This will not subject MDOC to conflicting obligations because the Court would just compel MDOC to apply the appropriate regulations. Granting FHVR its requested relief does not require MDOC to breach its obligations to HUD under any identified contract, nor has HUD ever threatened to recover payments from MDOC (or FHVR) should they make housing assistance payments to FHVR. Therefore, HUD is not an indispensable party to this action.

The crux of the declaratory judgment count centers on which HQS standards apply, those outlined in 24 C.F.R. Part 982 or those outlined in 24 C.F.R. Part 983. The reason this distinction is important is because MDOC improperly applied inapplicable HQS from 24 C.F.R. Part 982, the Housing Choice Voucher program to this project, rather than the applicable PBV HQS standards set forth in 24 C.F.R. Part 983. (Compl., ¶ 75, 108). Part 982 HQS standards apply to *individual* dwelling units, not entire properties. Part 983 HQS standards contemplate that discrete units may, from time to time, not meet HQS. (Compl., ¶ 109). This error in application caused MDOC to wrongfully conclude that it should cease making all HAP payments to FHVR with respect to the rehabilitated units. Unless there is a life-threatening condition in the unit, which is not applicable here, under Part 983, MDOC is not authorized to withhold HAP related to units where no children under six years of age reside. (Compl., ¶ 110).

FHVR is not asking the Court to interpret or decide the constitutionality of HUD regulations, nor is it challenging HUD's authority to issue any regulation. Case law, including MDOC's cited cases, supports the point that HUD is not a necessary party to this case because FHVR is merely asking for a declaration that the federal regulations that MDOC must apply to FHVR are set forth in 24 CFR Part 983.

While MDOC correctly asserts that "federal courts have joined HUD as an indispensable party to cases between subsidized housing project owners or residents and PHAs when the validity of HUD's regulations have been challenged, and not joined HUD when regulations are simply being applied in a civil action[.]," FHVR has not challenged any HUD regulations. (Brief ISO Mot. to Dis., p. 6 (Doc. 16)). To the contrary, FHVR only seeks the proper application of the applicable HUD regulation. Here, the question is what regulation applies in this civil action, not a challenge to the validity of those regulations.

## II.     Federal Courts Do Not Require Joinder Under these Circumstances.

In the first case cited by MDOC, the plaintiffs asserted that the housing authority violated its obligations under the Constitution and under HUD's regulations. Specifically, the court stated, "[p]laintiffs are actually seeking adjudication of the constitutional validity of HUD's regulations." *Wilson v. Seattle Hous. Auth.*, No. C09-226 MJP, 2009 WL 10676290, at *3 (W.D. Wash. Aug. 10,

2009). That case is distinguishable from the case here because FHVR is not contesting the constitutional validity of any of HUD's regulations; it is merely asking for a declaratory judgment that Section 983, and not Section 982, applies. (Compl., ¶ 111).

The other case cited by MDOC where the court found that HUD was an indispensable party is distinguishable as well. *Boles v. Greeneville Hous. Auth.*, 468 F.2d 476 (6th Cir. 1972). In *Boles*, the plaintiffs challenged an urban plan renewal approved by HUD in an action against a PHA. The plaintiffs asserted that the urban plan renewal violated HUD guidelines. However, HUD had already approved the plan. The court reasoned that since plaintiffs were attacking the plan which had already been approved, in turn they were attacking HUD's administrative decision. *Id*. at 479. Once again, FHVR is not attacking HUD or any of its administrative decisions. FHVR is simply asking the Court to confirm which regulation applies.

Another case cited by MDOC is comparable to the case at hand, confirming that HUD is not an indispensable party. *See Edgecomb v. Hous. Auth. of Town of Vernon,* 824 F. Supp. 312 (D. Conn. 1993). While the Housing Act of 1937 involved some Section 8 programs that no longer exist and the law that has been substantively amended since *Edgecomb*, the principal in *Edgecomb* supports FHVR's argument. In *Edgecomb*, defendants claimed that HUD was an

indispensable party because the housing authority was merely an agent which applied HUD's regulations, and their federal funding would be jeopardized if HUD was not added as a party to the case. Plaintiffs were not challenging the constitutionality of HUD's regulations, but alleged that defendants, the housing authority and its executive director, violated those regulations. *Id*. at 314. The court held, "[a] finding for plaintiffs here would not subject defendants to a risk of inconsistent obligations, Fed.R.Civ.P. 19(a)(2)(ii), or jeopardize defendants' standing with HUD. If a PHA has committed an error, it is required to take corrective action." *Id*. at 314 (*citing* HUD Handbook 7420.7, *Public Housing Agency Administrative Practices Handbook for the Section 8 Existing Housing Program*, ¶¶ 9–11 (1979)). As the court found in *Edgecomb*, joinder of HUD is not necessary for a just adjudication of this action because FHVR only challenges the housing authority's violation of the regulations and not the regulations themselves. Finding for FHVR would not jeopardize MDOC's standing with HUD because, as a PHA who committed an error, MDOC is required to take corrective action. In this case, the corrective action is to apply the correct regulation.

Similarly, in *Chesir v. Hous. Auth. of City of Milwaukee*, 801 F. Supp. 244 (E.D. Wis. 1992), the court held that HUD was not an indispensable party. In that case, plaintiffs were on the waiting list for Section 8 housing. They were issued a voucher, which meant they had 60 days to find suitable housing or the voucher

expired. *Id*. at 246-247. For reasons out of the plaintiffs' control, their housing could not be finalized in time and their vouchers expired. The defendant PHA interpreted the regulations to mean that plaintiffs' vouchers had terminated upon expiration. Plaintiffs sought a declaratory judgment asking the court to find that the defendant public housing authority's practice and policy of refusing to exercise discretion in extending the voucher violated their rights under the Housing Act of 1937 and the HUD regulations implementing that Act. *Id*. The court found the plaintiffs had no dispute with HUD regulations or HUD actions, but instead challenged the public housing authority's interpretation of HUD regulations. Further, the court held that if plaintiffs prevailed, "HUD's regulations and responsibilities will not be altered. [The PHA's] interpretation and procedures under the regulations are all that must change." *Id*. at 248. Such is the case here.

## III. FHVR's Request for Declaratory Judgment Will Not Subject MDOC to "Multiple and Conflicting Obligations," Such That HUD Is an Indispensable Party.

MDOC inaccurately claims that it would be subject to multiple, conflicting obligations, including financial penalties imposed by HUD, if the Court rules in FHVR's favor. (Brief ISO Mot. to Dis., p.11 (Doc. 16)). Despite MDOC's protestations, FHVR's request for declaratory judgment defining the applicable federal regulation insulates MDOC; it does not expose MDOC to alleged liabilities. MDOC's argument actually supports denying the motion. MDOC cites

to 24 C.F.R. § 983, not 24 C.F.R. § 982, in claiming that it may be prohibited from making HAP payments if a unit is not in compliance with HQS standards. (Brief ISO Mot. to Dis., p.11 (Doc. 16)). The issue in this case is whether MDOC improperly sought to apply HQS standards from section 982 and not section 983. If the Court rules that the appropriate HQS standards are contained within section 983, as FHVR submits, then the remaining issue is whether MDOC breached the PBV HAP contract or whether MDOC has a defense for its failure to pay by proving that FHVR did not comply with section 983 HQS standards. FHVR's claim for a ruling concerning the determination of the proper regulations to apply will not subject MDOC to HUD penalties.

Indeed, if FHVR's claim regarding the proper application of section 983 is valid, then MDOC's charges of FHVR's non-compliance are fundamentally flawed, and there is no basis for HUD to find that MDOC has failed to fulfill its obligations as a PHA. On the other hand, if FHVR is incorrect then MDOC should not have any exposure to HUD penalties in that case either.

Nor will the Court's decision on the declaratory judgment count lead to inconsistent interpretations of HUD regulations across the nation. Instead, the Court is merely being asked to determine which regulation applies in the Project-Based Housing Voucher program context where there is an issue or claim related to the presence of lead-based paint. The impact of the ruling is to ensure MDOC's

compliance with applicable federal regulation, ensuring regulatory consistency *by MDOC*, not HUD. Thus, there will be no widespread change in how HUD operates as MDOC insinuates.

Moreover, HUD has not directly or indirectly stated that it will cease funding MDOC if MDOC fails to comply with the guidance in HUD's communications. (Brief ISO Mot. to Dis., (Doc. 16)). HUD has not specifically threatened to punish MDOC either. Thus, MDOC's reasoning for joining HUD is based upon hypothetical scenarios. The communications provided in support of MDOC's Rule 12 motion merely show an HUD employee's answers to certain questions raised by an MDOC employee, not a regulatory enforcement action by HUD. HUD's Department Enforcement Center ("DEC") is the only entity statutorily authorized to enforce non-compliance by MDOC. 2 C.F.R. § 2424.1000, et seq. The HUD employee e-mail is from the Real Estate Assessment Center, not HUD's DEC. (Brief ISO Mot. to Dis., Ex. 1 (Doc. 16)). HUD is answering an inquiry from a PHA as it does every day in the ordinary course and does not direct MDOC to do anything specific, particularly with respect to FHVR, because HUD has no statutory authority to direct PHAs in this manner with respect to HAP Contracts between PHAs and owners. (Brief ISO Mot. to Dis., Exs.1-3 (Doc. 16)).

To the extent MDOC attached communications with HUD to support its claim that HUD is a necessary party, those communications simply show how an

employee at HUD interprets HUD guidelines. (Brief ISO Mot. to Dis. Ex. 2-3, (Doc. 16)). This does not further the argument that HUD is an indispensable party merely because an HUD employee offered his opinion. The communications are not official agency-published interpretations of the Housing Act of 1937 and related regulations, but in light of the Supreme Court's recent decision overturning *Chevron* deference, it would not matter even if they were. *See Loper Bright Enterprises v. Raimondo*, No. 22–451 (U.S. June 28, 2024). In *Loper Bright*, the Supreme Court held that "[t]he deference that *Chevron* requires of courts reviewing agency action cannot be squared with the APA" as "[Section 706 of the APA] makes clear that agency interpretations of statutes—like agency interpretations of the Constitution—are *not* entitled to deference." *Id*. at 4, 15. It is up to the Court to decide how to interpret HUD's guidelines. Therefore, the attached HUD communications are unavailing, as the Court does not owe deference to a federal agency employee's interpretation.

    In any event, FHVR submits that its interpretation of which regulation applies is correct. Defendant MDOC harmed FHVR by misapplying 24 C.F.R. Part 982 HQS standards rather than applying the proper 24 C.F.R. Part 983 HQS standards. Under Part 983, unless there is a life-threatening condition in the unit, MDOC is not authorized to withhold HAP related payments to units where no children under the age of six reside. MDOC has never asserted that there is a life-

threatening medical emergency, and because Part 983 is the correct regulation to be applied, MDOC is not, and has never been, authorized to withhold HAP payments from FHVR.

While not directly relevant to assessing the Motion to Dismiss, MDOC falsely accuses FHVR of failing to address any issues on the property relating to lead-based paint (Brief ISO Mot. to Dis., p. 3 (Doc. 16)). This assertion ignores FHVR's remediation efforts as outlined in the Complaint. It is inevitable that any building built before 1978 in the United States likely contains lead-based paint in some degree. With this in mind, FHVR worked to encapsulate and remediate the lead-based paint on the Freedom's Path property in conformity with federal law and regulation. Additionally, FHVR has undertaken extensive remediation efforts on the entire priority and not just Unit 41-101 on its own initiative even though there has been no legal obligation to undertake remediation efforts.

It is also significant that MDOC inspected all of FHVR's units in the Project and certified that they all passed HQS standards prior to the first resident occupying a unit. (Compl., ¶ 41). MDOC has never once asserted that this is a health emergency and could not because the residents of the unit in question were immediately provided alternative housing as an interim control until the unit was again compliant under 24 C.F.R. Part 35. After the Tenant in Unit 41-101 notified FHVR of the potential EBLL, FHVR moved the Tenant and his family to a hotel,

and later to home rented from Airbnb, and thereafter completed remediation work on the then vacant unit. (Compl., ¶ 65). A contractor certified under 40 C.F.R. Part 745 and 24 C.F.R. Part 35 cleared the Unit on or about January 17, 2022. (*Id*.). Similarly, FHVR hired Northern Industrial Hygiene, a state certified, EPA-compliant environmental consulting firm, to conduct a lead dust clearance retesting on Unit 41 on September 27, 2022. (Compl., ¶ 85). The reports stated that the paint stabilization activities performed by FHVR were successful. (*Id*.).

## CONCLUSION

FVHR respectfully asks that the Court deny MDOC's Rule 12 motion. As set forth above, HUD is not an indispensable party. This case should proceed as filed.

DATED this 23rd day of July, 2024.

        CROWLEY FLECK PLLP

        By: */s/ Jeffrey M. Roth*
            Jeffrey M. Roth

        ARNALL GOLDEN GREGORY LLP

        By: */s/ Aaron M. Danzig*
            Aaron M. Danzig

        *Attorneys for Plaintiff Fort Harrison Veterans Residences, LP*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2) of the District of Montana Local Rules, I certify that this brief contains 3,791 words, excluding caption and certificate of compliance, is printed in 14-point font, and is double spaced, except for footnotes and indented quotations.

*/s/ Jeffrey M. Roth*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July, 2024, the foregoing document was served on all counsel of record via the Court's CM/ECF system.

*/s/ Jeffrey M. Roth*