Michael P. Talia
Erin Lyndes
JACKSON, MURDO, & GRANT, PC
203 N. Ewing
Helena, MT 59601
Phone:  (406) 442-1300
Email: mtalia@jmgattorneys.com
       elyndes@jmgattorneys.com

*Attorneys for Montana Department of Commerce*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| FORT HARRISON VETERANS RESIDENCES, LP,<br><br>Plaintiff,<br><br>v.<br><br>MONTANA DEPARTMENT OF COMMERCE, in its official capacity and as a federally designated public housing agency,<br><br>Defendant. | Case 6:24-CV-00037-BMM-KLD<br><br>**REPLY TO RESPONSE IN OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTY** |

Defendant MDOC replies to FHVR's response (Doc. 19) to MDOC's motion to dismiss FHVR's complaint unless HUD is joined as a party (Doc. 15 & 16) as follows:

1

## INTRODUCTION

This dispute is based on MDOC's withholding of HUD subsidies, HAP, from FHVR because FHVR has not controlled or abated lead-based paint hazards throughout its Freedom's Path housing project. The requirement to control or abate lead-based paint hazards as a condition of HAP could not be more clear in federal statutes, regulations, and HUD policy. Similarly, MDOC's right to withhold HAP for HQS violations, like lead-based paint hazards, is express and unambiguous by regulation and contract. FHVR is trying to obfuscate this requirement, which, if sanctioned by this Court, will subject MDOC to conflicting liability from HUD. But HUD also has rights and obligations with regard to the HAP contract between FHVR and MDOC, including the right to step into MDOC's shoes to enforce the HAP contract. Without HUD involved in this lawsuit, and if FHVR is granted the relief it requests, MDOC will be untenably stuck between HUD's position on lead-based paint and this Court's ruling, and HUD will have its contract rights limited.

## ARGUMENT

FHVR says that MDOC applied the standards of 24 C.F.R. Part 982, for the Housing Choice Voucher ("HCV") Program, instead of the standards of 24 C.F.R. Part 983, for the PBV Program, and that is the basis of its

request for declaratory relief.  As noted in MDOC's opening brief (Doc. 16), 24 C.F.R. § 983.101 expressly applies the standards of 24 C.F.R. § 982.401 to PBV projects.  For lead paint regulations, the only difference between the PBV and HCV programs are that 24 C.F.R. Part 35 Subpart M applies to HCV, while Subpart H of Part 35 applies to PBV.  MDOC has applied the requirements of Part 983, which includes lead-based paint provisions and implements statutes that are applicable to HCV and PBV. 24 C.F.R. § 983.101(c).

      FHVR correctly notes that MDOC used a HUD form HQS inspection checklist for HCV projects, HUD-52580-A, in its inspections at Freedom's Path, but that is because no HUD HQS inspection form exists for PBV projects.  This specific issue is addressed in the technical assistance provided by HUD's Region VIII office to MDOC which was filed with MDOC's opening brief to show the potential for conflicting liability facing MDOC.  The HCV standard reflected in HUD-52580-A is *lower* than the standard for PBV projects.  Zachary Urban's memo states, "The PBV requirements exceed the requirements for an HCV unit because PBVs require a Risk Assessment, which must be performed by a certified Risk Assessor and include dust and soil sampling."  Decl. Cheryl Cohen, Ex. 3 p. 3 (Urban Memo May 24, 2024) (Doc. 16-4).  Yes, MDOC used a HQS

inspection form from the HCV Program. Regardless, the visual inspection for lead-based paint hazards concluded the chipping and peeling paint was above the de minimis standard applicable to both the HCV and PBV Programs. There is no factual basis in the Plaintiff's complaint to support the contention that the condition of the lead-based paint in and on the subsidized units at Freedom's Path complies with the PBV program requirements found in 24 C.F.R. § 983.101(c). FHVR wants this Court to say that FHVR does not have to mitigate lead-based paint hazards at Freedom's Path, which is legally incorrect.

When discrete units do not meet HQS from time to time, Part 983 requires the PHA (here MDOC) to "vigorously enforce the owner's obligation to maintain contract units in accordance with the HQS" and absolutely prohibits MDOC paying HAP for units which do not meet HQS. 24 C.F.R. § 983.208. FHVR argues that Part 983 contemplates that "discrete units may, from time to time, not meet HQS." Resp. Brf., p. 8 (Doc. 19). FHVR does not tell us, however, where in Part 983 this relaxed, noncompliance, standard is written. <u>It does not exist</u>. The owner agreed to rehabilitate the units in accordance with 24 C.F.R. Part 983, Subpart D by executing the Agreement to enter into HAP Contract. Plaintiff's Complaint, Ex. E, (HUD 52531A, Pt. 1, ¶ 1.2) (Doc. 1). In that agreement, and in

accordance with Subpart D, the owner agreed to develop the contract units to comply with the HQS. "At a minimum, the housing must comply with the HQS." 24 C.F.R. § 983.152(d)(2).

FHVR also argues that HAP payments may only be withheld in the case of life threatening HQS violations. Resp. Brf., p. 8 (Doc. 19). MDOC cannot find that provision anywhere in Part 983, just like the noncompliance standard FHVR refers to without a specific citation. Even after years of correspondence between the parties and counsel on this subject, no citation has been provided. 24 C.F.R. § 983.208(b)(2) authorizes MDOC to withhold HAP for "all or any contract units" if MDOC, "determines that a contract unit is not in accordance with the housing quality standards." In other words, if any one unit at Freedom's Path is not in compliance with the HQS, MDOC can withhold HAP payments for all units within the project. HUD's position on MDOC's remedies is further explained in PIH Notice 2023-06, sent by HUD Region VIII to MDOC. Decl. Cohen, Ex. 4 (Doc. 16-5).

PIH Notice 2023-06 also outlines HUD's remedies against MDOC if HUD determines MDOC has not complied with the PBV program requirements. That document says:

> If the PHA fails to take action to enforce the HAP contract and program requirements, HUD can act as described in Section 7.

5

> HUD can also impose civil money penalties against an owner (under 24 CFR 30.68) or debarment/suspension (24 CFR 5.105(c), 2 CFR part 2424), and can also assume the PHA's rights and obligations under the contract (and perform such obligations and enforce such rights) if HUD determines that the PHA has failed to take appropriate action (per Section 14 of the PBV HAP contracts).

*Id*., p. 8.  This notice is not a HUD employee's interpretation of HUD guidelines, as FHVR suggests at page 15 of its response brief, but official HUD policy.

Lastly, FHVR cites to one new legal authority, *Chesir v. Housing Authority of Milwaukee*, 801 F.Supp. 244 (E.D. Wisc. 1992).  HUD was found not to be an indispensable party in that case, but it was a § 1983 lawsuit against a PHA, not a HAP contract dispute.  *Chesir* is different from FHVR's case because in the HAP contract between MDOC and FHVR, HUD has the ability to step into MDOC's shoes under the HAP contract.  Additionally, *Chesir* was about the application of HUD's regulations regarding the termination of housing vouchers, not HQS.  HUD's regulations, and its prescribed HAP contract form which was used by MDOC and FHVR, give HUD remedies against MDOC and FHVR for failing to apply the HQS as HUD interprets them.

## CONCLUSION

FHVR's claims should be dismissed unless HUD is joined as a party.

6

Without HUD as a party defendant, MDOC may be liable to comply with interpretations of HUD's regulations which subject MDOC to conflicting claims from HUD.  HUD may also have its own contractual remedies against FHVR limited in the event HUD steps into MDOC's shoes in the HAP contract with FHVR, which HUD has the right to do.  HUD should be a party in this dispute about HUD's regulations and HUD's money.

DATED this 1st day of August, 2024.

                                JACKSON, MURDO, & GRANT, PC

                                By: _____
                                   Michael P. Talia
                                *Attorneys for Montana Department of Commerce*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief totals 1,237 words as calculated by Microsoft Word, excluding the caption, certificates, tables, and index, if any.

_____
Michael P. Talia

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served on the following using the court's CM/ECF system on the 14 day of August, 2024.

Jeffrey M. Roth
Michael Green
CROWLEY FLECK PLLP
305 South 4th St E, Suite 100
Missoula, MT 59801

Aaron M. Danzig
Orlando J. Cabrera
ARNALL GOLDEN GREGORY LLP
171 17th St., NW, Suite 2100
Atlanta, GA 30363-1031

_____
Michael P. Talia